GEORGE H. SWEET and Another, Plaintiffs, *v.* JOSEPHINE L. HOLLEARN, Defendant.*

Supreme Court, Fulton County, January 12, 1932.

*Maider & Maider*, for the plaintiffs.

*T. Cuthell Calderwood* [*Paul L. Boyce* of counsel], for the defendant.

* See, also, 141 Misc. 135.

ROGERS, J.   If restrictive covenants in a deed are to be binding upon the remaining lands of the grantor there must be a mutual covenant in the deed, a general plan showing uniformity of restrictions (*Bristol* v. *Woodward*, 251 N. Y. 255), or oral promises contemporaneously made by the grantor to the grantee of which any subsequent purchaser has either actual or constructive notice. (*Bimson* v. *Bultman*, 3 App. Div. 198; *Turner* v. *Howard*, 10 id. 555.) Clear intent to establish restrictions must be evidenced in one of these three ways.

The covenant in defendant's deed is not made in terms reciprocal. Indeed, from it alone, the inference is that the restrictions were solely for the grantor's benefit.   The circumstances strengthen this inference.   The plaintiff urged the defendant to sell him a lot situate near her residence.   She hesitated, then finally acquiesced, but insured herself by the restrictions in the deed that the buildings on the property and the use to which it would be put would not be objectionable to her and injurious to her adjoining residence.

There was no general plan or scheme of development of grantor's remaining land giving rise to an implication that it would be sold in lots for residential purposes and that the deeds would contain restrictions like or similar to those in plaintiff's deed.   The grantor inherited the premises from her father in 1924, and had always used them for agricultural purposes.   She had sold previously only one lot, the deed of which contained building restrictions more strict than plaintiff's deed, and a description to the center of the street rather than up to the street.   So, the only two lots sold are different in both description and restriction.   No map of the premises laying out lots and streets has been made.   True, a former owner, years ago, evidently having in mind that some day streets might be opened through the property, set out two parallel rows of saplings which have grown into trees, but no street between them has ever been dedicated or even opened.   The property has remained fenced and undeveloped.   Perhaps the owners of this land hoped that some day the growth of the village would justify a development into lots but " servitudes do not result by implication from a subjective state of mind." (*Bristol* v. *Woodward*, 251 N. Y. 275, 283.)   There must be a chart or map filed or exhibited showing exact and definite uniformity of restrictions before they attach by implication.

This brings us to the inquiry whether the defendant contracted orally with the plaintiff that her adjoining lands would be restricted in the same manner as his, and is, therefore, estopped from now refusing to carry out the agreement.   Plaintiff testified in substance that defendant said to him at the time of the sale that she intended to restrict her remaining lots with the same restrictions as contained in

his deed, and that he replied that he was glad to have the restrictions in his deed inasmuch as the adjoining property was to be similarly restricted to residential purposes. He does not say that she said, "I promise," or "I agree to restrict my remaining lands." He states rather that she remarked that she intended to restrict them. There is a difference between expressing an intent to do something for one's own benefit and a promise to do it partly for the benefit of another. The plaintiff importuned the defendant to sell. He was not induced to buy or accept the restrictions in his deed on the faith of any remark made by her to the effect that she intended to restrict her other property. He would have taken the property with the restrictive covenants in the deed even if she had refused to commit herself as to any intended use of her remaining property.

Defendant's daughter participated, to some extent at least, in the negotiations. She acted as emissary and, when the plaintiff called at defendant's home and made his offer to purchase, she heard the conversation and testified that her mother made no promise or representation as to restricting her other property — that the remaining property was not mentioned. Defendant was then in failing health and has now become weak in both mind and body and could not give testimony. True, some of plaintiff's testimony regarding defendant's statements concerning restrictions, made on another occasion when the daughter was not present, is not directly disputed. That she said nothing to plaintiff about her other property in her daughter's presence at the time the size of the lot and the price to be paid were discussed is a strong circumstance tending to show that she did not purpose to bind her other property. The testimony indicates strongly that defendant felt she was doing plaintiff a favor by letting him have the lot at the price and of the size fixed by him.

When the school meeting to choose a site was held plaintiff electioneered to defeat the choice of defendant's site, but did not publicly proclaim at the school meeting, or in any way notify the electors, that she had restricted the site to residences and that he bought and improved his lot relying upon the restrictions. This would have been strong argument to help him in his campaign to beat the project, and his failure to use it suggests that his assertion of the claim now is an afterthought.

Considering that there is no explanation why the covenants in the deed are not reciprocal if she agreed to restrict the remaining lands; considering that on the sale of only one $600 lot it would not be good judgment on her part to unnecessarily tie up her remaining property; considering the daughter's testimony, and plaintiff's failure to assert at the school meeting the claim he now

makes, I do not believe that he has met the burden of showing by the fair preponderance of the evidence that the defendant made with him a definite oral agreement to place the same restrictions as contained in his deed on her remaining lands.   If she said anything on this subject at all, it was simply a declaration of intent to sell her other lots for residential purposes, which is insufficient to create a servitude.

While the foregoing disposes of the case, there is another interesting aspect.   The covenant in plaintiff's deed is: " It is hereby understood and agreed that *only one dwelling house and private garage* shall be built on the above described premises, and that no public garage, or manufacturing or mercantile business of any kind shall be carried on [on] any part of said premises, and any violations contrary to this paragraph shall render this indenture null and void and the property hereby conveyed shall revert to the party of the first part her heirs and assigns."

There is nothing in the language of this covenant itself that prevents the plaintiff from using the dwelling house that he has erected on his property as a day or boarding school.   Restrictive covenants are not favored.   (*Reformed Protestant Dutch Church* v. *Madison Avenue Bldg. Co.*, 214 N. Y. 268.)   Nothing should be read into the language of the covenant to extend its meaning beyond that which its language fairly imports.   The plaintiff's claim is that the same restrictions should be upon the adjoining lands as upon his own.   If he is not restricted from using his own lot for school purposes certainly the adjoining lands are not so restricted.   Plaintiff evidently interpreted the covenant to mean that a structure other than and in addition to " one dwelling house and private garage " might be built on the premises, as he erected thereon a substantial henhouse.   Plaintiff asked the defendant to sell him a larger lot than originally discussed between them. Defendant may have had in mind that the plaintiff might attempt to erect *two* dwelling houses and *two* private garages on the property, and, therefore, by the covenant restricted the property to *one* dwelling house and private garage.   If it was intended that the covenant would restrict the property solely to residential use this purpose could have been, by appropriate language, clearly expressed. If the premises had been restricted in use to " private residential purposes " a very different question would be presented.   (*Gallon* v. *Hussar*, 172 App. Div. 393, 398; *Hepburn* v. *Long*, 146 id. 527.) If the grantor intended, by restricting the premises to one dwelling house and private garage, that the property should be used only for residental purposes there was no necessity of adding the words that a public garage or manufacturing or mercantile business was

not to be conducted on the premises, for there was scant likelihood that a public garage or manufacturing or mercantile business would be conducted in a dwelling house or private garage. The covenant is open to the construction that if one dwelling house and private garage are erected on the premises another dwelling house and private garage may not also be erected thereon, and that if any other building is erected on the premises it shall not be used as a public garage, or for manufacturing or mercantile business. The covenant does not prevent the property from being used for an apartment house or a boarding-house dwelling. (*Reformed Protestant Dutch Church* v. *Madison Avenue Bldg. Co., supra.*) Perhaps it does not bar the erection on the premises of a church, school or any other building for any lawful business, except one to be used as a public garage, or for manufacturing or mercantile business. If the facts extraneous to the deed are considered such construction would not prevail, but considering the language of the deed alone, and applying the rule that where a restriction fairly lends itself to conflicting constructions the one must be taken that restricts the least, there is some force in the argument. " Restrictive covenants are to be strictly construed against the person seeking to enforce them, and all doubts must be resolved in favor of natural rights and a free use of property, and against restrictions." (18 C. J. 387.)

The central school district's interests should not be ignored. It purchased the property, paid part of the purchase price and received possession without any knowledge of any oral agreement as to restrictions affecting the property. The plaintiff filed a *lis pendens* in this action on April 9, 1931, but it does not appear that this notice came to the attention of the central school district before April 15, 1931, when the agreement to purchase was made. Money damages will not compensate for the loss occasioned in delaying the building of a needed schoolhouse. The education of the children in the district will be hampered by the lack of school facilities. It would be difficult to measure the loss in money. The central school district became the equitable owner of the property upon the execution and delivery of the contract and the payment made on the purchase price. It is meet that an injunction does not have to be issued that would prevent the central school district from receiving the deed to which it is justly entitled.

The complaint should be dismissed, with costs. A proposed decision may be submitted by the defendant and the plaintiffs may submit requests to find.