BEATRICE VANDERSHOOT, Plaintiff, *v.* ROBERT H. KOCHER et al., Defendants.

Supreme Court, Trial and Special Term, Broome County, July 28, 1947.

*Charles G. Hull* for plaintiff.

*A. E. Gold* and *Floyd E. Anderson* for defendants.

Devo, J. The plaintiff and the defendants are owners of lots in the same real estate subdivision, which are subject to a common covenant running with the land, containing certain restrictions, including a provision that the owner " 2. Will not use said premises or cause, suffer or permit the same to be used for any business, manufacturing, mercantile or commercial purposes " and " 3. Will not erect, cause, suffer or permit to be erected any apartment house, garage, barn or other structure on said premises, except a one or two family dwelling house." The stated purpose of these restrictions was, " It is the purpose and intention of the party of the first part to restrict the use and occupation of the above described premises * * * to strictly residential purposes in order that said Asbury Court may become a quiet, refined and attractive residential section." This covenant appears in the direct chain of title of both parties and is binding upon them (*Buffalo Acad. of Sacred Heart* v. *Boehm Bros.*, 267 N. Y. 242).

Concededly, there has been no change in the character of the neighborhood since the restrictions were first imposed.

The defendants now plan and have actually commenced to erect an unattached garage on the rear of their lot. Quite obviously, this constitutes a violation of restriction No. 3, and will be enjoined regardless of the fact that most of the other property owners in the subdivision have consented, unless the conduct of the plaintiff is such as should bar her from obtaining the equitable relief which she now seeks (*Evangelical Lutheran*

*Church* v. *Sahlem,* 254 N. Y. 161). The defendants do not seriously deny their violation, but base their defense and their counterclaim for injunctive relief as well upon the contention that the plaintiff herself has violated and continues to violate the same restrictive covenant in two particulars: first, by maintaining an apartment house on her premises, and second, by conducting her real estate business therefrom.

As to the first contention, it should be noted that the restriction is that the owner " Will not *erect,* cause, suffer or permit to be *erected* any apartment house * * *." (Emphasis supplied.) The plaintiff has not and does not contemplate the *erection* of an apartment house. She has merely utilized the premises into which her large dwelling house had been subdivided without exterior change, many, many years ago, and long before she became the owner. I am not unmindful of the line of authorities, and particularly *Baumert* v. *Malkin* (235 N. Y. 115) and *Goodhue* v. *Pennell* (164 App. Div. 821) cited by the defendants, which seem to hold that although the covenant literally proscribes only the erection of a building other than that specified, it will be interpreted as also restricting the subsequent use of the structure. I do not find, however, that any of these cases have gone so far as to apply this doctrine to a pre-existing building which has in no way been structurally altered or remodeled since the imposition of the restriction.

Mr. Weed, in his excellent and exhaustive work on real property, states without citing case authority: " Restrictions as to buildings ' to be erected ' do not limit the use of buildings already erected." (3 Weed, New York Real Property [3d ed.], p. 1406.)

In both the *Baumert* and *Goodhue* cases (*supra*) not only were the buildings involved constructed after the imposition of the restriction in question, but also the restrictions were actually against use as well as erection. In the absence of any proof of any structural change in the plaintiff's premises after the restriction became effective, I do not feel that there has been any violation of the covenant so far as restriction No. 3 is concerned.

This brings us to the question of whether or not the renting out of these apartments constituted a use of the premises for a business or commercial purpose in violation of restriction No. 2. The underlying purpose of the entire covenant was to assure the residential character of the subdivision. Such a purpose is not violated by the erection of an apartment house

(*Reformed P. D. Church* v. *Madison Ave. Bldg. Co.,* 214 N. Y. 268; *Pierson* v. *Rellstab Brothers, Inc.,* 219 App. Div. 552). In these cases, however, there was no specific restriction against the use of the premises for business or commercial purposes, and hence, they do not afford us a complete answer to the question. The cases cited by the defendants to the effect that the conduct of a rooming or a boarding house may constitute a business use do not seem to be in point. It is, of course, common knowledge that a boarding or rooming house is of a quasi-public nature, catering as a rule to transients as well as to permanent guests, and that their operation calls for the expenditure of a considerable amount of time and labor on the part of the proprietor. A person who owns and rents out apartments on the other hand, performs no personal services and can scarcely be placed in the category of a boarding house keeper. It would certainly come as a great surprise to anyone who might have remodeled his home into two or three apartments to learn that he was conducting a business on the premises. " Restrictions to one house and *against business,* do not prohibit apartment houses." (3 Weed, New York Real Property [3d ed.], p. 1395. Emphasis supplied.)

Furthermore, the covenant itself anticipates and permits the renting out of apartments in that it specifically provides for the erection of two-family dwelling houses.

In accordance with the foregoing, I find that the maintenance of the apartment house on the plaintiff's premises does no violence to the restrictive covenant. In passing, I might add that even if there was a violation on the part of the plaintiff in this respect, it is a violation of such long standing that it is very questionable whether or not a court of equity would grant relief (*Sahm* v. *Poushter,* 187 Misc. 486).

The second contention that the maintenance of a real estate office on the premises constitutes a use thereof for business purposes is clearly established by the evidence. " Business " is defined by Webster as including " Any particular occupation or employment habitually engaged in, * * * for livelihood or gain." The plaintiff's own activities and those of her salesmen and agents, her telephone and directory listings, her newspaper advertising, her license and her sign, all point conclusively to the fact that she is using the premises for business purposes as the phrase is generally understood in common speech and usage.

In *Trustees of Columbia College* v. *Thacher* (87 N. Y. 311, 316) the conducting of a real estate office as well as other trades

and occupations was held to be a violation of a covenant prohibiting " ' any kind of manufactory, trade or business whatsoever,' upon the premises." A similar decision was reached in *Lavan* v. *Menaker* (280 Pa. 591).

*Schnibbe* v. *Glenz* (245 N. Y. 388), cited by the plaintiff, does not call for any different interpretation. There the sole question was whether the use of defendant's home for the purpose of conducting a real estate and insurance business therein destroyed its character as a private dwelling house as a matter of law. The court said that it did not, and hence, judgment for the plaintiff was reversed. Ultimately, it was held on the facts presented, after a trial, that the plaintiffs were not entitled to an injunction (226 App. Div. 698, revd. 252 N. Y. 7).

In the instant case the facts point to a contrary conclusion, and moreover, the restrictive covenant now before us goes much further than the one in the *Schnibbe* case (*supra*). Here, the restriction is not against a building other than a private dwelling, but against engaging in any business, and also, the intent is specifically stated to confine the use of the premises to " strictly residential purposes ". In this respect, the case at bar is similar to *Stewart* v. *Barber* (182 Misc. 91), where a restriction against the carrying out of " any manufacture, business, trade or occupation " was coupled with a covenant that the property was to be used " exclusively for residential purposes ". The court placed great emphasis upon the use of the latter phrase in holding that the defendant should be enjoined from practicing dentistry in his home. So too, here, the plaintiff's activities as a real estate agent, not only constitute a business in every sense of the word, but also do violence to the provision that the premises shall be used for " strictly residential purposes ".

Having found that the plaintiff herself has violated and still is violating the restriction in her chain of title, we must next determine whether or not such action deprives her of her equitable remedies against the defendants for their admitted violations of the same restrictions. " Those who come into a court of equity must come with ' clean hands.' Seeking relief against the illegal acts of others, they must themselves be free from the imputation of illegality in respect of the transaction of which they complain." (*Wolfenstein* v. *Fashion Originators Guild of America,* 244 App. Div. 656, 660.) Our courts have repeatedly and consistently applied the " clean hands " doctrine to those seeking to enforce restrictive covenants (*Wallack Construction Co.* v. *Smalwich Realty Corp.,* 201 App. Div. 133, 135;

*Gallon* v. *Hussar*, 172 App. Div. 393, 400; *Pappas* v. *Excelsior Brewing Co.,* 170 App. Div. 692; *Schermerhorn* v. *Bedell,* 163 App. Div. 445, affd. 221 N. Y. 536; *Coates* v. *Cullingford,* 147 App. Div. 39; *Alvord* v. *Fletcher,* 28 App. Div. 493; *Wilmot* v. *Gandy,* 122 Misc. 571, 574, affd. 210 App. Div. 823; *Halpin* v. *Poushter,* 59 N. Y. S. 2d 338, 344).

It is true that in most of the cases cited, both parties were guilty of the same infraction. This is not a necessary prerequisite, however, as was demonstrated in the *Pappas* v. *Excelsior Brewing Co.* (*supra*) and *Alvord* v. *Fletcher* (*supra*).

In the instant case the plaintiff is violating restriction No. 2 relating to use, and the defendants are violating restriction No. 3 relating to the type of structure which is permissible on the subdivision. Both of these restrictions, however, are part and parcel of the one general covenant which has for its purpose the preservation of a " quiet, refined and attractive residential section." Although it must be admitted that a private garage is not usually considered foreign to a residential section, the general layout of the subdivision and the location and shallowness of the defendants' lot, would clearly make a " back yard garage " a decided detriment to the appearance of the whole plot.

Since both the plaintiff and the defendants have violated the restrictive covenant, neither is now in a position to seek relief in a court of equity. If their respective activities are to be enjoined, it must be at the instance of someone who is not himself a violator.

Complaint dismissed.