Robert W. Basoom, J.
By this action, pursuant to article 15 of the Real Property Actions and Proceedings Law, plaintiffs seek to bar the defendants from claiming an interest in plaintiffs’ lands in the Town of Grlenville, Schenectady County, and to cancel and discharge of record certain restrictive covenants thereon. The lands are known as lots 11 and 12 in Block E of Mayfair, a subdivision of lands formerly of H. G. Veeder Realty Co., Inc., as shown on a map thereof duly filed in 1931. This subdivision embraces a plot fronting 850 feet on the westerly side of Saratoga Road, or Route 50 as it is known, by about 1,000 feet deep, divided into 74 lots and four streets, three of which streets intercept Saratoga Road and are known respectively from south to north as Surrey Road, York Road, and Sheffield Road. On September 2, 1941 the Veeder Realty Co., Inc., conveyed said lots 11 and 12 to a grantee whose deed thereof contained certain covenants restricting structures thereon to certain set-back lines, to the erection or maintenance of any building unless it be adapted for and used only as a dwelling house or necessary outbuilding for the service thereof, to one such dwelling per lot, to certain minimum floor areas for buildings and to the use of certain designated building materials, to the time within which construction of any building must be completed after commencement, prohibiting the accumulation of junk or refuse, or use of the premises for trade, manufacture, public garages, sale of intoxicants, or the keeping of horses, mules, cattle, goats, sheep or swine, and also prohibiting occu *15 pancy by a colored person or alien. Like restrictive covenants were included in the deeds to the other lots, and the same were to run with the land and be binding on all claiming under the original purchasers for the benefit of the owners of any part of the tract. Forty-seven lot owners have been made parties defendant, of whom 20 have defaulted in appearing, and 27 have answered.
By mesne conveyances plaintiffs acquired title to said lots 11 and 12, Block E, on August 28,1954, subject to and with notice, or chargeable with notice, of the covenants. These lots are the two most northeasterly in the subdivision, lot 11 being at the interception of Sheffield Road with Saratoga Road, and lot 12 adjoins it on the north. The lots are vacant, unimproved, wooded, and adjoin another unrestricted lot just out of the subdivision, north of lot 12, also owned by plaintiffs, on which is their residence and business establishment. Substantially all the other lots in the subdivision have been improved by the erection of modest single family residences, or form a part of the yards thereof.
The basis of plaintiffs’ complaint is that by reason of increased traffic on Saratoga Road and the invasion of commercial enterprises into the immediate vicinity, the covenants have spent their force and are now not only onerous to them, but of no benefit to defendants, and, moreover, render plaintiffs’ land valueless for residential purposes, unsaleable, and unuseable; further, that existing breaches of the covenants by certain defendants within the restricted area which, because of laches, they claim cannot now be enjoined, render enforcement of the covenants discriminatory against and inequitable to plaintiffs.
Changes indeed there have been since the restrictions were originally imposed. Since 1963 a town ordinance has zoned all lots in the subdivision for single family residential use, the minimum lot size requirement for such use being 15,000 square feet. In 1967 the State of New York appropriated a strip of land from the front portion of the lots for the purpose of widening Saratoga Road from a two-lane to a four-lane highway, thus reducing plaintiffs’ lots to a combined area of 13,250 square feet, inadequate for a single family residence under the ordinance.
When Mrs. Mary Thomas, one of the defendants in default, who owns the four restricted lots abutting Saratoga Road between Sheffield and York Roads, commenced occupancy in 1940, she was “ Far from the madding crowd’s ignoble strife ”. There was but one house on Sheffield Road. Behind her home *16 was a forest. Southerly were open fields. Her view to the front across Saratoga Road was of haulms and asparagus in an open field. No business existed in the area such as now causes her to harvest a bushel of litter a day from her land. The fields of asparagus have now given way to fields of asphalt serving the Mayfair Shopping Center, which embraces a myriad diversity of enterprises from art galleries and barber shops to restaurants and silversmiths.
When plaintiffs first occupied their home in December, 1954, some businesses had been established on the easterly side of Saratoga Road, but a portion of that area was still devoted to a forest of pines. These have now given way to a forest of signs, evidencing the presence of Willowbrook Shopping Center, a conglomerate of trade and business from banks and cleaners to discount shops and supermarkets.
On the westerly side of Saratoga Road, outside the restricted area, a somewhat similar metamorphosis has occurred. Immediately north of the lots in question plaintiffs have themselves contributed to the influx of commerce by operating a metal finishing and electroplating business at the rear of their residence. Next to them a national grocery chain now operates a market where formerly were trees and shrubs. The lights from its parking area, the unloading of its supply trucks in early morning hours, the talk of the truck drivers, the noise of its fan and ventilators combine in a cynical cycle of sound to disturb the nocturnal repose of the neighborhood. Its patrons, in their haste to procure its comestibles, beat paths across plaintiffs’ residential lot so that of them it can no longer be said they “ dwélt among the untrodden ways.”
Also on this westerly side of Saratoga Road three major gasoline companies operate service stations on the land immediately southerly of the restricted area, and an ice cream store immediately beyond them offers the refreshment of its wares to the public.
Saratoga Road is, and for many years prior to the creation, of the restrictive covenants in question has been, a main artery of traffic from Schenectady and Scotia on the south to Ballston Spa and Saratoga Springs on the north. Like all other such highways in this country it now accommodates a much larger volume of vehicular traffic than formerly. The noise, fumes, interference with television reception from this traffic, and difficulty of access to the highway by reason of its congestion, diminishes the desirability of plaintiffs’ lots and those of the other, owners fronting this highway, for residential purposes*
*17 Within the restricted area itself some claimed violations of the covenants have occurred. All but one were on the lots abutting Saratoga Road. The most southerly of these lots forms a portion of one of the above-mentioned gasoline service stations. None of the station’s buildings or equipment extend onto this restricted lot, but some years ago a trucking and gravel contractor parked his vehicles and equipment thereon without charge by the station operator, and some used vehicles were sold therefrom. This practice has been discontinued, however, for more than five years. Next northerly, at the corner of Saratoga Road, a dentist, who does not reside there, practices his profession. On the other Saratoga Road and Surrey Road corner the trucking and gravel contractor had his business headquarters, consisting of a desk and telephone, in his home. This, too, has been discontinued for over five years. Then comes another nonresident who practices the art of physic on his lot. Next to him, at the corner of York Road, another dentist resides and has his dental offices. The defendant Thomas, owner of the lots between York and Sheffield Roads, occupies the only house thereon, and for many years conducted the business of selling small antiques therefrom. She too, however, discontinued her adventure in commerce a year and a half ago.
In the interior of the development a lone departure from the covenants is claimed. L. H. Getty, one of the answering defendants, a Justice of the Peace for 19 years, owns and occupies lots 16 and 17 in Block A, at the southwest corner of the tract and nearly 1,000 feet from plaintiffs’ lots. From his home he dispenses what is sometimes referred to as ‘ ‘ cow pasture justice ’ ’. This, of course, is a governmental function and not trade. Whether the good gray Judge offends the prohibition against use other than as a dwelling house, is not necessary to be determined. His activity, if a departure, that of the trucker, and the sale of antiques from a home were the only deviations from adherence to the covenants at the time plaintiffs purchased their property.
Plaintiffs’ contention, that by reason of defendants’ failure to enjoin the alleged violations within the subdivision, the latter are now estopped from claiming plaintiffs cannot do likewise, is untenable. One may take no notice of violations inoffensive to him without losing his right to enforce covenants in case of offensive violations (de Lima v. Mitchell, 49 Misc. 171; Rowland v. Miller, 139 N. Y. 93; Zipp v. Barker, 40 App. Div. 1, affd. 166 N. Y. 621). He may forbear provoking his neighbor without forfeiting his defense when in turn provoked. By calling attention to defendants’ failure to enjoin past violations, *18 plaintiffs demonstrate their familiarity with the principle that each lot owner could invoke the aid of equity to enforce observance of the covenants (Lefferts Manor Assn. v. Fass, 28 Misc 2d 1005, 1007; Landsberg v. Rosenwasser, 124 App. Div. 559; Korn v. Campbell, 192 N. Y. 490, 495) against any other owner, including plaintiffs. Enforcement at the behest of defendants precludes absolution on behalf of plaintiffs.
On the issue of changed conditions, plaintiffs rely upon a line of cases typified by Trustees of Columbia Coll. v. Thacher (87 N. Y. 311); McClure v. Leaycraft (183 N. Y. 36), and Batchelor v. Hinkle (210 N. Y. 243). These enunciate the principle that where intervening circumstances or contingencies, not within the contemplation of the parties, caused by third persons, have so changed the character of a neighborhood as to defeat the scheme of the original covenantors, equity will not enjoin a violation by a subsequent purchaser but will remit the parties to their remedy at law for damages. This case is clearly distinguishable from that proposition. It is not an equitable action for an injunction. There is no element of discretion involved. Although equitable rules may be applied, it is a statutory action, essentially for a declaratory judgment. Indispensable to the holding in those cases was a finding that enforcement of the covenant would afford no benefit to the party invoking its protection. No such finding can here be made. Plaintiffs also rely on Lo Medico v. Conway (201 Misc. 663), an article 15 action involving only a covenant against use for trade or business. That, too, is distinguishable for there there was a finding that the object that the parties to the covenant had originally intended to accomplish had been defeated, that the covenant was no longer effective for its designed purpose, and its enforcement could not restore the neighborhood to its former desirable residential character. Here plaintiffs have established only that their own property and the similarly restricted lots abutting Saratoga Road are unsuited to residential use. It does not follow that the object of the covenants has been defeated as to the 61 remaining lots, or that whatever conditions now exist have rendered them unsuitable to the use to which by the covenants they were appropriated.
The encroachment of business into the territory adjacent the easterly perimeter of the restricted tract alone is insufficient reason for nonenforcement of the covenants (Hayes v. Leonard, 30 A D 2d 745; Normus Realty Corp. v. Disque, 20 A D 2d 277, affd. 16 N Y 2d 912; Pagenstecher v. Carlson, 146 App. Div. 738). Deterioration of the protected area itself must be shown (Bullock v. Steinmil Realty, 1 Misc 2d 46, 49). The question, *19 therefore, is whether the existence of two dental offices and that of a physician on this easterly perimeter, and the office of a Justice of the Peace at the opposite extremity of the tract, when combined with such extraterritorial encroachment and the traffic increment on the highway adjacent the easterly perimeter, have so altered conditions in the restricted tract as to .render the covenants valueless to the defendants, and the tract unsuitable for residential purposes. The plaintiffs have the burden of establishing the affirmative of this proposition (Clintwood Manor v. Adams, 54 Misc 2d 141, revd. on other grounds 29 A D 2d 278). To this end they introduced opinion evidence to the effect that their own lots are now worth little or nothing for residential purposes, and that if the restrictions were removed there would be no adverse effect on defendants ’ lots, other than that of the adjoining, answering defendant Walsh, and that such lot would not be adversely affected provided an adequate ‘ ‘ buffer ’ ’ and barrier were established, and ‘1 assuming a controlled type of improvement that was harmonious with the rest of Route 50 ’ ’. Obviously this is an inadequate and ineffective substitute for the control already afforded by the covenants, and no proof that the existing conditions in the tract and the adjoining area have frustrated the original building scheme or rendered the covenants valueless to defendants. Plaintiffs thus have failed to sustain their burden of proof.
Ooncededly, plaintiffs ’ lots have depreciated in value for residential purposes. Whether this arises from their proximity to a commercial area, from the fact that the highway appropriation reduced them to a size less than the minimum required by the zoning ordinance (for which damage they have presumably been compensated), or from some other cause, is of no moment. Pecuniary considerations are irrelevant to any issue here (Trustees of Columbia Coll. v. Lynch, 70 N. Y. 440). One may sympathize with plaintiffs, but having purchased with knowledge of the restrictions, their hardship is self-created (Richmond v. Pennscott Bldrs., 43 Misc 2d 602, 613).
The covenants are of actuality and substance and were meant to inure to the benefit of the whole subdivision (Longdowd Corp. v. Straight Improvement Co., 39 Misc 2d 1005). They are mutual and contractual. Granted that to relieve plaintiffs’ lots of the restrictions, now burdensome to them, would be to their advantage, but it cannot be done without disadvantage to defendants. One portion of a common building scheme cannot be treated independently to the damage of those who have abided by the covenants (Dollard v. Whowell, 174 App. Div. 403, affd. 225 N. Y. 706). The court finds the defendants’ easements *20 have substantial value to their properties, and destroying them would be precursory to further commercial development, to their detriment (Congregation Khal Chasidim of Brooklyn v. Congregation Beth El of Borough Park, 19 A D 2d 622). They are entitled to be protected “by all the power of the law” (Evangelical Lutheran Church v. Sahlem, 254 N. Y. 161, 168).
Parenthetically, it may be added that the covenant against occupancy by a colored person is not void, but is unenforceable (Shelley v. Kraemer, 334 U. S. 1).
Judgment, without costs, must be for the answering defendants, dismissing the complaint, and declaring the restrictive covenants described in the complaint, other than that referring to use of the property by persons of a particular race, to be enforceable at law and in equity.