LOUIS FORO et al., Respondents, v. HERBERT DOETSCH, JR., et al., Appellants.

Third Department, May 25, 1972.

*Robert J. Nolan* for appellants.

*Miller & Mannix, P. C. (John C. Lemery* of counsel), for respondents.

*Per Curiam.* This is an appeal from a judgment of the Supreme Court, entered April 27, 1971 in Saratoga County, which imposed restrictions on appellants' land.

The action was commenced on April 8, 1969. The plaintiffs seek to impose the same restrictive covenants contained in their deeds from Herbert Doetsch, Sr. upon the premises now owned by Herbert Doetsch, Jr. and his wife. The plaintiffs' deeds contained in this record do not contain any mutual restrictions or reservations on the part of the grantor which would thereby restrict the use of the grantor's premises.

The issues upon this appeal are whether or not the record contains probative evidence to support the grant of equitable relief by the trial court based upon its findings that there was a general plan of development which would impose mutual restrictions and, further, that Doetsch, Sr. made oral promises to a number of grantees that the restrictions would apply to all the property.

The appellants contend that the trial court erred in admitting testimony by the parties or their predecessors in interest over

objections based on CPLR 4519; that the examination before trial of the deceased common grantor was erroneously admitted in evidence (CPLR 3116, 3117); and that there was insufficient evidence to support a finding of promises or intent to mutually bind the grantor's remaining land to the same uses as permitted by the plaintiffs' deeds.

The record contains insufficient evidence to support a grant of equitable relief and, accordingly, it is not necessary to consider the alleged errors relating to the admission of evidence.

In 1939, Herbert Doetsch, Sr., deceased as of the time of trial, became the owner of about 50 acres of land located on the south side of a town road. In September of 1947 he conveyed a lot having about a 100-foot frontage on the town road and being about 600 feet in depth to Walter White and his wife. Thereafter, and on or about May 1, 1951, he conveyed a parcel adjoining the White's and having approximately the same dimensions to one Weaver who, in turn, conveyed such premises to one Earl Clark sometime prior to August of 1956. In July of 1956 Doetsch conveyed a lot having road frontage adjacent to the Clark premises and being 120 feet in depth to Paul L. Waldon and his wife, predecessors in title to the Foros—plaintiffs herein. In April of 1960 Doetsch conveyed a lot having frontage on the town highway and being approximately 150 feet easterly of the Waldon premises to Oscar Everts and his wife—plaintiffs herein. Thereafter, in January of 1962, Doetsch conveyed a triangular parcel of land containing some 2.29 acres and adjoining the former premises conveyed to Weaver (Clark) to Earl F. Clark and his wife—plaintiffs herein. This latter conveyance would appear to be of premises having no access to the town road and having no other means of access contained in the conveyance. In April of 1964 Doetsch conveyed to the Waldons an additional parcel of land adjoining the original conveyance at its southerly boundary and having the identical dimensions of the original conveyance—this deed also granting a right of way over a "proposed street" to Bluebird Road, said right of way adjoining the parcel conveyed.

Upon the present record the foregoing are the sole conveyances by Doetsch, Sr. which relate to the premises at issue in this action. All of said deeds contain restrictions which, among other things, prevented any business use thereof and provided that "no building or other structure shall be moved to or upon said premises from any other place".

By deed dated September 30, 1968, Doetsch, Sr. conveyed the remaining portion of his premises situated on the southerly side of the town road to the appellants-defendants, Mr. and Mrs.

Herbert Doetsch, Jr. without any restrictions contained in said conveyance on the use of the premises.

In November of 1968 Waldon became aware that Doetsch, Jr. intended to create a trailer park on the remaining premises and thereafter, on December 30, 1968, sold to Louis Foro and Joan Foro his parcels of land; however, he told the Foros about the pending plans for the trailer park of which he had knowledge. The record does not establish that the presence or absence of restrictions on the Doetsch premises had any effect upon the sale from the Waldons to the Foros. That the Waldons were not affected by any lack of enforceable mutual restrictions is demonstrated by the fact that they are not parties to this action and/or have made no apparent attempt to seek damages.

The Clarks offered no evidence that they purchased their premises in reliance upon any facts which would give rise to mutual restrictions. Accordingly, they are in a position of merely being beneficiaries of a judgment that one of the other sets of plaintiffs is entitled to equitable relief. The Foros did not testify and there is no evidence that they relied upon any possible mutual restrictions of the Doetsch premises when they obtained title from the Waldons. The mere fact that the Foros had some knowledge that their predecessors in title believed that the Doetsch premises were subjected to restrictions does not establish any reliance by the Foros on any such knowledge.

Upon the present record, the Foros and the Clarks would have no independent right to equitable relief, their interest being vicariously dependent upon the Everts. The only plaintiffs herein who could have been subjected to some inequities by the sale of the remaining Doetsch premises to Doetsch, Jr. without conforming restrictions as to use are the Everts.

The Everts allegedly purchased in reliance upon the remaining premises being developed as a residential subdivision in conformance with the restrictions in their deed and they still owned and resided upon their original purchase as of the time of trial. Even as to the Everts, the record does not establish that the value of their premises is affected by the presence or absence of restrictions on the Doetsch premises, however, such a consideration only goes to the question of whether or not equity would in its discretion impose mutual restrictions and does not affect their *right* to relief.

Oscar Everts testified that in 1960 he decided to purchase his lot and went to see Herbert Doetsch, Jr. who showed him a map (plaintiffs' Exhibit No. 9) upon which they identified the road front parcel which Everts wanted to purchase. According to Everts, Doetsch, Jr. told him that his father would " restrict

all of this property  \*  \*  \*  as it was sold off, lot per lot ''. David White, Esq., testified that as attorney for Doetsch, Sr. he received the afore-mentioned map from Dotesch, Jr. with a note that Everts wanted to purchase a specific parcel marked thereon. The plaintiffs read that part of Herbert Doetsch, Jr.'s examination before trial in evidence wherein he denied ever having known Oscar Everts in 1960 and stated that he did not live in this area at the time of the conversation testified to by Everts. The plaintiffs having offered testimony that no promises were made by Doetsch, Jr. to Everts, the finding of the trial court that such promises were made is without any foundation in the record. Furthermore, there is nothing in the record to establish that Doetsch, Jr. was the agent of his father or that Everts had any basis for reliance upon alleged promises or warranties by Doetsch, Jr. and the trial court made no finding as to agency.

In any event, it is apparent that Everts did not rely upon any conversations which he had with Doetsch, Jr. as he testified that upon the closing of title he conferred with Doetsch, *Sr.* in the presence of David White prior to accepting delivery of the deed. Everts said that he asked Doetsch, Sr. if the rest of the land would be subject to the restrictions and Doetsch, Sr. replied: '' I wouldn't think of selling a lot out of my development unless these restrictions were the same as yours.'' David White was unable to recall any conversation between Everts and Dotesch, Sr. in his presence.

The promises recited by Everts are not promises to restrict the use of the remainder of the land, but merely a promise or promises that as individual lots were sold they would be restricted. The conveyance to Doetsch, Jr. was not a sale of an individual lot or lots, but was one of acreage. The alleged promises are consistent with the examination before trial of Doetsch, Sr. wherein he generally admitted that at least as to his road frontage land he intended the restrictions to be imposed on each lot. There can be no doubt as to his intention that the restrictions imposed were done so for his benefit with no concern for benefiting his grantees.

The question as to oral promises does not concern what he intended in the event of individual sales of lots, but rather what he intended as to devoting his remaining land strictly to individual residential plots. As the court noted in *Bristol* v. *Woodward* (251 N. Y. 275, 285) '' To say that the several lot owners are to have the benefit of the servitudes, if created, is one thing. To say that the common grantor is under a continuing duty to create them is obviously quite another ''. There

was no promise to Everts either expressly or by implication that the hoped for residential development would be carried forward or that the restrictions would bind the remaining land regardless of lot sales. Assuming, *arguendo*, that the promises which Waldon testified Doetsch, Sr. made to him were relevant to this case, there still is no support for the finding by the trial court that promises were made to " a number of grantees ". Furthermore, Waldon testified that he expressly raised questions as to the restrictions at the closing of title to his 1956 purchase in the presence of Doetsch, Sr.'s attorney at law, but did not at that time ask if the remaining land was to be bound by the same restrictions. It must be noted that at the time of the second purchase by the Waldons in 1964, they were represented by counsel and that deed contains no mutuality of restrictions.

In considering the promises allegedly made, assuming they were admissible, the actual condition of the remaining premises and/or alleged subdivision should be considered to determine if there might have been acceptable reliance upon such facts to give substance to the alleged promises or an interpretation of such promises that the remaining land was to be devoted solely to uses in accordance with the restrictions in the deeds given by Doetsch, Sr. In this regard the trial court found (p. 291) " a general plan of development for his (Doetsch, Sr.) property, and * * * the intent to impose uniform restrictions upon all the property ". This finding of the trial court as a basis for imposing mutual restrictions assumes a sophistication which the record conclusively demonstrates was lacking. In his examination before trial Doetsch, Sr. categorically denied having made any promises to anyone to restrict his remaining lands in any way. His testimony shows that a survey was made and the surveyor confirmed such a survey with delivery of a completed print thereof occurring after the alleged date of the transfer of title to Waldon in 1956. The only map testified to by Everts was plaintiffs' Exhibit No. 9 and that is also the only map in evidence identified by Waldon. The map as Waldon described it had no possible subdivision or residential development shown thereon and, indeed, Waldon testified that it was made solely at his request to identify his proposed purchase. As Everts saw the same map in 1960 it had been pencil sketched to show lots and a proposed street area, the identity of the surveyor's work being only sufficient to establish the over-all boundaries of the Doetsch, Sr. premises and the proposed 1956 conveyance to the Waldons together with the prior miscellaneous conveyances.

The surveyor testified that he had not placed those pencil marks on Exhibit No. 9 and Doetsch, Sr., in his examination before trial, indicated that he had placed such pencil marks on the map. Exhibit No. 9 bears no title or any indication that it was intended as a formal plot of a subdivision or lots. Indeed, it indicates upon its face a boundary line which would mean that a portion of the pencil lots and the proposed road area were not owned by Doetsch, Sr. At most, Exhibit No. 9 would indicate only a possible arrangement whereby lots could be carved out of the entire premises of Doetsch, Sr. It is entirely consistent with the examination before trial of Doetsch, Sr. wherein he testified that he had hoped a market would develop for the residential use of his premises lying to the rear of the road frontage and that he would be able to sell off such rear land as individual lots.

As in *Steinmann* v. *Silverman* (14 N Y 2d 243, 246) the map was never filed as a subdivision map. Furthermore, Exhibit No. 9 upon its face does not demonstrate a complete development plan and it is obviously tentative in nature. Recognizing that there was a general intent to develop the acreage, it does not appear there was any intent that all of the premises be used exclusively as a residential area. (Cf. *Brown* v. *Fred J. Hovey, Inc.*, 284 App. Div. 1094.) In the case of Waldon (Foro) there had been no development activity in the alleged (subdivision area prior to his purchase in 1956, and it does not appear that there had been any activity other than the sale to Everts in 1960 from the time of Waldon's original purchase until his subsequent purchase in 1964. As to Everts, the sole development activity, in what could be considered a subdivision, had been the sale to Waldon in 1956 and the subsequent construction by Waldon of a house thereon some four years prior to Everts' purchase. Upon this record the most that could be found was a hope on the part of Doetsch, Sr. that if he sold his front lots and houses were constructed thereon, then there would be a market for his rear land as lots. The reality of such a scheme is demonstrated by the fact of only one new grantee subsequent to Waldon in a span of some 12 years.

The record would be inadequate to support a finding that there was any such actual development of the premises of Doetsch, Sr. as to permit the equitable imposition of mutual restrictions. (Cf. *Brown* v. *Fred J. Hovey, Inc., supra*; see *Sweet* v. *Hollearn*, 142 Misc. 408.)

The plaintiffs rely upon three cases, *Bristol* v. *Woodward* (251 N. Y. 275, *supra*), *Sweet* v. *Hollearn* (*supra*), and *Ridg-*

*way* v. *Cockburn* (163 Misc. 511). The *Ridgway* case dealt with the enforcement of restrictive covenants as between grantees whose deeds had identical restrictions and that case is inapplicable to this case. In both the *Bristol* and *Sweet* cases the courts refused to find that the grantor had subjected his premises to specific restrictions contained in the grantees' deeds. *Sweet* v. *Hollearn* (*supra*) was also referred to by the trial court in its decision. The *Sweet* case contains alleged promises similar to those alleged herein and evidence of a general intent and hope to sell building lots — but the trial court found such evidence insufficient for equitable relief. In the present case there had been only one sale out of the alleged subdivision prior to the Everts' purchase and after the Everts' purchase there was only one adjoining lot sale to Waldon. From 1956 to 1968 there had been only sales of three lots with two grantees out of the alleged subdivision and both of such grantees had access from a highway. The resemblance of these isolated sales to the *Sweet* case would require a reversal on that precedent.

This court does not discern anything unusual insofar as the owner of a large parcel of land might readily promise initial purchasers of the portion having road frontage that as he sold off individual lots he would impose like restrictions but, nevertheless, not intending to bind his remaining premises to a residential use and/or a development for sale as subdivision lots. It does not appear unjust to require purchasers to distinguish between the hopes and desires of a grantor and reality at the time of purchase. To require the grantor to perform some legal act which would expressly bind his remaining premises would be expected of grantees having such concern as both Everts and Waldon professed in this case. Their failure to insist upon mutual covenants or some document attesting to their alleged understanding as to the remaining premises must be considered in the light of the facts and circumstances relating to any proposed subdivision at the time of their purchases, and the conclusion is inevitable that the grantor did not intend to restrict his remaining lands to any particular development purposes and that the grantees must have been aware of his intent or willing to purchase without any binding assurances.

It is undisputed that upon the basis of the deeds as drawn there would be no enforceable mutual restrictions in an action at law based upon the deeds themselves. The plaintiffs had the burden of clearly establishing that if equity did not provide relief there would be an unjustness to them. The record

fails to establish any evidence which would reasonably support equitable relief and assuming all of the promises and alleged maps as being true and favorable to the plaintiffs, nevertheless, the present record establishes that it would be inequitable to impose a mutuality of restrictions upon the original grantor's remaining lands. A review of such precedent as is available in regard to implying a mutuality of otherwise unilateral restrictions contained in a deed establishes that something more than a general scheme or an oral promise is necessary as a condition to the granting of equitable relief. The present record does not establish that the plaintiffs were unaware of the necessity of a mutuality of restrictions when they took their deeds or even that they believed the grantor would be bound by such equivocal oral assurances as he allegedly gave. The plaintiffs failed to establish any clear right to equitable relief.

The judgment should be reversed, on the law and the facts, with costs.

GREENBLOTT, J. (concurring). Although the trial court properly received in evidence the examination before trial of Herbert Doetsch, Sr. introduced by respondents (see CPLR 3116, subd. [a]; see, also, Practice Commentary by Professor Siegel, McKinney's Cons. Laws of N. Y., Book 7B, CPLR 3116, p. 476), it could not be the predicate for admission into evidence by respondents of the testimony of several grantees as to oral promises allegedly made to them by Doetsch, Sr. prior to his death. Testimony at an examination before trial introduced by respondents does not constitute testimony of the deceased person given in evidence within the meaning of the waiver provision of CPLR 4519 (see 5 Weinstein-Korn-Miller, N. Y. Civ. Prac., par. 4519.23). Once the testimony as to these allegedly oral promises is removed, there is insufficient evidence upon which the trial court could find the existence of a general plan of development which would impose mutual restrictions. Further, as stated by the majority, there was no support in the record for a finding that Doetsch, Jr. was the agent of his father. I therefore concur in the result reached by the majority.

HERLIHY, P. J., STALEY, JR., COOKE and REYNOLDS, JJ., concur in Per Curiam opinion; GREENBLOTT, J., concurs in a separate opinion in which HERLIHY, P. J., STALEY, JR., COOKE and REYNOLDS, JJ., concur.

Judgment reversed, on the law and the facts, with costs, and complaint dismissed.