Albert H. Buschmann, J.
This action to enforce a restrictive covenant by a permanent injunction was tried by the court without a jury. Though conceding the existence of the covenant which applies to six lots, defendant contends, not only that the covenant has not been violated, but also that it is unenforceable because of (1) substantial changes in the nature of the lots and adjacent neighborhood, (2) plaintiffs’ violation of the covenant, and (3) the failure of plaintiffs and their predecessors to enforce the covenant despite prior violations. Defendant also counterclaims to declare the covenant unenforceable pursuant to section 1951 of the Beal Property Actions and Proceedings Law.
*392 The court finds the following facts, after having heard and evaluated the evidence presented. The covenant arose in 1908 as a result of a subdivision creating the six lots, which are the only lots on a dead-end street off a busy two-lane thoroughfare. Three of the lots are on the north and three of the lots are on the south of the dead-end street. The covenant running with the land provides: “ No one of the six plots of land * * * .shall be used except for one private residence, to cost not less than $5,000., except that upon the rear of each plot may be erected, with such private residence, one garage for private use only in connection therewith. On none of said plots shall be erected or maintained at any time any apartment buildings, boarding houses, stores, business houses, barns or .stables.”
Plaintiffs, husband and wife, own and reside in a single-family house on the southeast corner lot which also abuts on the busy thoroughfare. The husband is a doctor who, as did his father before him, maintains an office in the house where he treats patients approximately 12 hours a week, in addition to his practice at hospitals. The entrance to the office is from the side of the house towards the busy thoroughfare. Behind this and the other lots on the south side of the dead-end street is a synagogue which has purchased the burdened parcel immediately to the west of the plaintiffs. This lot has, for many years, been used by the synagogue as a parking lot without objection from plaintiffs or their predecessors, except for minor complaints relating to fencing and lights which were modified ’by the synagogue pursuant to plaintiffs’ request. The parking lot is entered from the dead-end street and is used with great frequency due to the almost continuous activities at the synagogue, as well as catered affairs there about once a week. Plaintiffs’ view of the parking lot is cut off by a high fence and bushes. The court believes the statement of plaintiff husband that the use of this lot for parking is not offensive to him.
The southwest, northeast and northwest corner lots covered by the restrictive covenant have single-family dwellings thereon, but the middle lot on the north side of the dead-end street is vacant.
In 1971 defendant, a religious corporation, purchased the northwest corner lot and the vacant lot to the east. The single-family house on the northwest corner lot was converted on the interior for the purpose of being used as a school (Teshiva) which now has 47 students in grades 9 through 12. The plaintiff doctor has been disturbed by the students roller-skating in the street in the late afternoon or early evening and by the frequent *393 failure of the school to remove 8 or 10 garbage cans from the street for several days after collection.
In the court’s opinion, defendant’s operation of the school on the property involved violates the restrictive covenant appertaining to the property. This is so despite the necessarily strict construction that must be given to the restrictive covenant. (Single v. Whitmore, 307 N. Y. 575; Buffalo Academy of Sacred Heart v. Boehm Bros., 267 N. Y. 242, 249; Etkin v. Hyney, 32 A D 2d 704.) iClearly defendant is not using the property for a “ private residence ”. In response to defendant’s contention, the court notes that the covenant herein is significantly different from that in Sweet v. Hollearn (142 Misc. 408, 411). In the Sweet case the covenant prevented other than “ one dwelling house and private garage ” on the land and the court found that since the use of such buildings was not restricted, the conforming house could be used as a school. Here the covenant limits the use of the land and not merely the physical nature of the buildings placed thereon. Therefore, the remaining questions deal with whether, despite defendant’s violation, the restrictive covenant is unenforceable.
In this regard, defendant has sustained the burden of showing a substantial change in the area covered by the restrictive covenant, mainly because of the use of one of the lots by the synagogue as a parking lot. Despite this, the covenant is enforceable if it is of actual and substantial value to the properties. (Koch v. Nestle, 27 A D 2d 633; Congregation Khal Chasidim of Brooklyn v. Congregation Beth El of Borough Park, 19 A D 2d 622.) The court finds that the covenant has such value because the evidence presented shows that, though the residential character of the area involved has deteriorated, the area nevertheless retains a residential character of substantial value. That value will be adversely affected by the presence of groups of students of the ages involved and by the care of the school property by persons other than private residents. In effect, the court does not consider plaintiffs’ attitude in standing on their covenant as “ unconscionable or oppressive ”. (Evangelical Lutheran Church v. Sahlem, 254 N. Y. 161, 166; Mohawk Containers v. Hancock, 43 Misc 2d 716.) The covenant, therefore, is enforceable to the extent of prohibiting defendant’s operation of a school on the property.
Plaintiffs are not, despite defendant’s contentions, prevented from enforcing the covenant by reason of their failure to attempt to prevent other alleged violations of covenant, primarily the use of the adjacent lot as a parking lot. Plaintiffs’ failure to *394 object to violations which they considered inoffensive does not result in a forfeiture of rights to enforce the covenant to prevent violations which they deem offensive. (Cilberti v. Angilletta, 61 Misc 2d 13, 17.)
The court also rejects defendant’s contention that plaintiffs cannot enforce the covenant because the medical office in their house violates the covenant. Admittedly, equitable relief would not be available to the plaintiffs if they were violating the covenant, for then they would not be coming into equity with clean hands. (Pappas v. Excelsior Brewing Co., 170 App. Div. 692.) Plaintiffs, however, are not violating the covenant as defendant contends. Only incidental to the use of the house as a private residence is its use as a medical office and, moreover, this incidental use is inconspicuous and does not disturb the residential character of the neighborhood. (Blair v. Ladue, 14 A D 2d 373; Neilson v. Hiral Realty Corp., 172 Misc. 408, 411; Iselin v. Flynn, 90 Misc. 164; see, also, Fleischer v. Third Brevoort Corp., 40 A D 2d 661; Bell v. Gitlitz, 65 Misc 2d 998, affd. 38 A D 2d 656; 21 ALR 3d 641, 655-659.) Though Stewart v. Barber (182 Misc. 91, 92) is seemingly to the contrary, a careful reading reveals that there the practice of dentistry in an otherwise private residence was enjoined because the covenant provided that the affected houses were to be used “ exclusively for residential purposes ”. In the absence of a reference in the covenant here indcating that other than exclusive residential use is prohibited, the incidental nonresidential use as a medical office will not be deemed a violation of the covenant. (See Vandershoot v. Kocher, 190 Misc. 1, 5.) Again, the court concludes that plaintiffs can enforce the covenant.
Accordingly, pursuant to CPLR 4213, the court finds that defendant should be enjoined from operating a school on the property involved and that defendant’s counterclaim should be dismissed.