WOODVALE CONDOMINIUM TRUST *vs.* JAMES SCHEFF
& another.[1]

No. 88-P-564.

Middlesex. February 17, 1989. — June 30, 1989.

Present: PERRETTA, KAPLAN, & KASS, JJ.

*Real Property*, Condominium, Restrictions. *Condominiums*, Master deed.
*Words*, "Family day care home," "Residential purposes."

Discussion of cases in which courts have considered whether organized
child care or teaching, performed for a fee, could be carried on consis-
tently with a residential use restriction. [531-533]
Restrictive language in a master deed creating a certain condominium com-
plex, which was repeated in the unit deeds for residential units in the
complex, providing that the units be used "solely for residential dwelling
purposes," prohibited the owners of a unit in the complex from operating
a "family day care home," as that term is defined in G. L. c. 28A, § 9,
in their unit. [533-535]

CIVIL ACTION commenced in the Superior Court Department
on October 23, 1987.

The case was heard by *Joseph S. Mitchell, Jr.*, J., on a
motion for summary judgment.

*John W. Bishop, Jr.*, for the plaintiffs.
*Francis E. Jenney* for the defendants.

KASS, J. Among the restrictions in the master deed (see
G. L. c. 183A, § 8) which created the Woodvale Condominium
was a provision that, "Each of the residential buildings and
each of the Units are intended to be solely for residential
dwelling purposes." The Scheffs, the defendants, have been
operating a family day care home in unit no. 399-4, a residential
unit, and the question which the parties present is whether that
activity is prohibited by the restrictive language. We conclude
that it is.

[1] Lois Horan-Scheff.

Such facts as form the basis for decision were stated in the verified complaint of the condominium trust. To that complaint there were appended: excerpts from the condominium master deed, a copy of the unit deed delivered to the Scheffs, excerpts from rules and regulations of the Woodvale Condominium and from the declaration establishing the condominium trust, and a confirmation of the pertinent license to provide family day care services at unit no. 399-4. Upon filing of the Scheffs' answer, which did not dispute the material facts, the trust moved for summary judgment. A Superior Court judge rendered summary judgment against the moving party, i.e., in favor of the Scheffs. See Mass.R.Civ.P. 56(c), 365 Mass. 824 (1974).

"Family day care home" is a term of art defined in G. L. c. 28A, § 9, inserted by St. 1972, c. 785, § 1, as "any private residence which on a regular basis, receives for . . . care during part or all of the day, children under seven years of age or children under sixteen years of age if such children have special needs." One may not operate a family day care home without a license (G. L. c. 28A, §§ 10 and 11), and Lois Horan-Scheff obtained a license to provide day care to "five children other than her own."

The Scheffs contend that as, by definition, a family day care home is conducted in a private residence, it must follow that running such a service is conformable with residential use. Child rearing is hardly a stranger to home life; the six child limitation assures a group no bigger than a good-sized family; and home day care deserves encouragement as matter of public policy. Such arguments found favor with the Michigan Court of Appeals when it reconciled a "residential purposes" restriction with operation of a family day care home in a house in a subdivision. *Beverly Island Assn.* v. *Zinger*, 113 Mich. App. 322, 326-331 (1982). See also *J.T. Hobby & Son* v. *Family Homes of Wake County, Inc.*, 302 N.C. 64, 72-74 (1981) (group home for mentally retarded consistent with use limitation in a subdivision for "residential purposes."); *Shoaf* v. *Bland*, 208 Ga. 709, 711-712 (1952) (kindergarten not inconsistent with lots to be "used solely as residential lots"); *Gregory*

v. *State Dept. of Mental Health, Retardation & Hosp.*, 495 A.2d 997, 1002 (R.I. 1985) (group home for six mentally retarded persons within scope of "single-family dwelling" and "residential purposes only"). All those cases, however, concern free standing buildings in subdivisions. In such cases doubts as to the meaning of a restriction are "resolved in favor of the freedom of land from servitude." *St. Botolph Club, Inc.* v. *Brookline Trust Co.*, 292 Mass. 430, 433 (1935). *Walker* v. *Gross*, 362 Mass. 703, 706 (1972). *Brennan* v. *Kos*, 15 Mass. App. Ct. 513, 514 (1983). The North Carolina and Rhode Island cases cited above, it should be observed, involved group *homes* in which the activity involved was simply residing, albeit by denizens whose needs made their living dependent on a degree of supervision.

By no means have the decisions lined up in one direction. Cases in which courts have decided that organized child care or teaching, performed for a fee, could not be carried on consistently with a residential use restriction include: *Williams* v. *Tsiarkezos*, 272 A.2d 722, 725-726 (Del. Ch. 1970) (home day care precluded); *Matthews* v. *Olson*, 212 So.2d 357 (Fla. Dist. Ct. App. 1968) (day nursery precluded); *Berry* v. *Hemlepp*, 460 S.W.2d 352 (Ky. 1970) (day care precluded); *Ginsberg* v. *Yeshiva of Far Rockaway*, 74 Misc.2d 391, aff'd, 36 N.Y.2d 706 (1975) (school precluded). Cf. *Cook* v. *Hoover*, 428 So.2d 836 (La. App. 1983) (large scale day care center assumed to violate restriction). See Annot., Childrens' Day Care Use as Violation of Restrictive Covenant, 29 A.L.R. 4th 730 (1984). Again, all of the authorities cited in this paragraph involve free standing buildings or lots, rather than condominiums. Use restrictions which govern condominiums, as we shall observe, are to be examined in a different light. In *Board of Managers of Village Square I Condominium Assn.* v. *Amalgamated Trust & Sav. Bank*, 144 Ill.App. 3d 522 (1986), the only condominium case which has come to our attention, the court assumed without discussion that the operation of a day care center violated the covenants imposed on a residential condominium unit. The opinion of the court considered whether the board of managers had given adequate

notice and hearing to the unit owner concerning the claimed violation.

That all family day care homes are, by definition, in residences does not mean that all residences must accommodate family day care homes. The syllogism is false; it is possible through public and private restrictions to limit or expand what activities may be conducted within a residence beyond maintaining a private place of abode. Inherent in condominium (literally "joint sovereignty"[2]) ownership is the sharing, often close, of physical space. Against the outside world, a condominium unit is the owner's castle, but the fellow unit owners in the condominium have a legitimate interest as to certain aspects of what goes on beyond the moat and within the gates. See *Hidden Harbour Estates, Inc.* v. *Norman*, 309 So.2d 180, 181-182 (Fla. Dist. Ct. App. 1975) ("each unit owner must give up a certain degree of freedom of choice which he might otherwise enjoy in separate, privately owned property").

The condominium statute, G. L. c. 183A, recognizes that interest when it provides that a master deed shall include, "A statement of the purposes for which the building and each of the units are intended and the restrictions, if any, as to their use." G. L. c. 183A, § 8(*g*), inserted by St. 1963, c. 493, § 1.[3] Section 4(1) of c. 183A, as appearing in St. 1985, c. 788, § 5, provides that "[n]o unit shall be devoted to a use prohibited in the master deed or any lease which is submitted to the provisions of this chapter." Those who submit real estate to the condominium regime of c. 183A may impose reasonable restrictions on the use of units, and persons who contemplate acquisition of a condominium unit can choose whether to buy into those restrictions. See *Franklin* v. *Spadafora*, 388 Mass. 764, 771-773 (1983); *White Egret Condominium, Inc.* v. *Franklin*, 379 So.2d 346, 350 (Fla. 1979).

---

[2] See The American Heritage Dictionary 307 (2d College ed. 1982); Oxford English Dictionary 789 (Compact ed. 1971); 1 Rohan & Reskin, Condominium Law & Practice § 1.01 (1965).

[3] A similar provision for the inclusion of restrictions on use appears in the Uniform Condominium Act § 2-105(12), 7 Uniform Laws Ann. 461 (1985).

Whether a condominium may prohibit the conduct of a family day care home is, therefore, not the question. It may. The question is whether the language in the Woodvale Condominium master deed, and repeated in the unit deeds for residential units in the condominium, effected such a prohibition. In ordinary meaning, "residential purposes" connotes use in connection with private lives of persons: where they sleep, eat, bathe, relax, entertain, and raise families. "Residential purposes" excludes the conduct of business and occupation, except by way of dispensation. So it is, for example, that zoning codes frequently permit the practice of medicine as *accessory* uses in residence districts.

Conducting a family day care home involves the operation of a business enterprise, albeit a modest one. Customers pay a fee for a service. The proprietor must obtain a license; one does not require a license to reside. Family day care homes are subject to State regulation (G. L. c. 28A, § 10[c] and 102 Code Mass. Regs. §§ 8.00 et seq. [1986]) and to visits and inspection at any reasonable time. G. L. c. 28A, § 10(d). These elements of licensure and supervision differentiate the operation of a family day care home from activity which is so home-like as not to be distinguishable from residence, e.g., writing a novel. Indeed, by regulation, a family day care home is distinguished from "a private residence used for an informal cooperative arrangement among neighbors or relatives . . ." 102 Code Mass. Regs. § 8.02(11) (1986). Operators of a family day care home may have "Approved Assistant[s]" as that term is defined in 102 Code Mass. Regs. § 8.05 (1986).

Although surely minor, a family day care home will generate some comings and goings by parents arriving and departing with their children and making midday visits. The modesty of the traffic does not alter that such regular arrivals and departures are not usual incidents of residence. The condominium association, with some plausibility, expresses concern that the presence of children at play on the condominium premises — by contractual arrangement — presents the condominium association with contingent liabilities which are either not contemplated by the association's insurance or, if within the scope

of coverage, are likely to raise the premium in the future. In subtle fashion there is physical activity different from that associated with just living. See *Brennan* v. *Kos*, 15 Mass. App. Ct. at 515.

Returning to the language of the master deed, the injection of the word "solely" into the phrase "intended to be solely for residential dwelling purposes" inhibits construing the phrase as descriptive rather than preclusive. On the basis of language and the condominium context, we conclude that, laudable and benign as a family day care home surely is, the Woodvale Condominium Trust is entitled to prevent the operation of a family day care home in a residential unit. The case is one where, in view of the language of the documents and considering the function and apparent purpose of those documents, the court ought not to be wiser than the parties. *Guerin* v. *Stacy*, 175 Mass. 595, 597 (1900). See generally Hyatt & Downer, Condominium & Homeowner Assn. Litigation: Community Assn. Law 42-44 (1987).

The judgment is reversed and a judgment is to enter enjoining the defendants from operating a day care home in unit no. 399-4 in Woodvale Condominium.

*So ordered.*