**Lester MAULL and Susan Maull, Plaintiffs–Appellants,**

v.

**COMMUNITY LIVING FOR the HANDICAPPED, INC., Defendant–Respondent.**

**No. 58322.**

Missouri Court of Appeals,
Eastern District,
Division Four.

June 28, 1991.

Motion for Rehearing and/or Transfer to Supreme Court Denied Aug. 8, 1991.

Application to Transfer Denied Sept. 10, 1991.

Michael H. James, Doster, Robinson & James, Chesterfield, for plaintiffs-appellants.

Rollin J. Moerschel, Thompson & Mitchell, St. Charles, for defendant-respondent.

William L. Webster, Atty. Gen., Mary S. Tansey, Asst. Atty. Gen., Joann Leykam,

Gen. Counsel, Mo. Dept. of Mental Health, Jefferson City, for amicus curiae Mo. Dept. of Mental Health.

Kenneth M. Chackes, Mo. Protection and Advocacy Services, St. Louis, for amici curiae Mo. Protection and Advocacy Services, Advisory Committee on Disability Issues to the U.S. Dept. of Housing and Urban Development and William Goble.

Ann B. Lever, Legal Services of Eastern Missouri, Inc., St. Louis, for amicus curiae William Goble.

SMITH, Presiding Judge.

Plaintiffs appeal from the trial court's denial of their request for temporary and permanent injunctions to prevent defendant from constructing and operating a residential group home for mentally retarded young adults on a parcel of land adjacent to plaintiffs' residence. Plaintiffs' petition is premised on the contention that a restrictive covenant applicable to both plaintiffs' and defendant's land precludes the operation of such a home. We affirm.

The restriction involved provides:

"1. *LAND USE AND BUILDING TYPE.* **No lot shall be used except for single family residential purposes.** No building shall be erected, altered, placed or permitted to remain on any lot **other than one single family dwelling,** except permission is hereby granted to erect and construct church buildings and edifices to be used exclusively as places of religious education and religious worship, on any tract containing not less than one (1) acre. No residence shall be used directly or indirectly for business or any quasi-business, **or for any other purpose other than that of an exclusive private residence for one family.** No house trailer, tent, or shack, shall be permitted on any lot, nor shall any basement or garage in the tract be used as a residence temporarily or permanently, nor shall any residence of temporary status or character be permitted." (Emphasis supplied)

The home under construction by the defendant contains thirteen rooms exclusive of baths. Eight of those rooms are bed-rooms, one for each of the planned mentally retarded residents. Additionally there is a living room, dining room, family room, kitchen, and a small office for record keeping. The house has four and one-half baths. Externally the house appears to be a large single-family residence. It has an oversized garage to accommodate a van equipped to handle wheelchairs. There will be no external signage nor other indication of the use of the facility. It is located on a large lot and maintenance of the grounds will be provided by the defendant. The undisputed testimony establishes that the building will have an external appearance compatible with the remainder of the subdivision. Certain institutional modifications such as sprinklers and prominent exit markings will all be in the interior of the building.

The residents of the home will be citizens of the county with varying degrees of retardation. The home is designed to enable them to learn to function in a non-institutional home environment by learning living skills such as cooking, cleaning, and laundry. Staff employees of defendant will come to the premises on a daily basis to help the residents learn such skills, but will not remain overnight on the premises. Their presence at the home will be predominately in the morning when the residents are preparing to leave for work or school and in the evening when the residents return and are preparing dinner and cleaning up. The residents will all go to work at a sheltered workshop or attend a training facility to prepare themselves for employment, depending on their capacities while in the home. It is the intention of the defendant to prepare the residents to work and live as functioning individuals in the community. It is expected that most of the residents will eventually leave the group home and relocate to their own residences in the community. Some may remain permanently in the group home. The residents will not be related by blood or marriage.

The trial court in its findings of fact and conclusions of law did not determine whether the proposed structure or its use was in violation of the restrictive covenant. It assumed for purposes of the case that

the covenant was violated. It then determined that under the federal *Fair Housing Act, 42 U.S.C. 3601 et seq.*, the covenant could not be enforced to preclude the type of group home involved here. On appeal neither of the parties address the question of whether the covenant itself prohibits the group home proposed. They and the amici curiae direct their attention to issues involving the Fair Housing Act, the standing of defendant to raise that Act, equal protection arguments, and eminent domain challenges. Before any of those thorny issues need be reached the threshold question of whether the covenant itself prohibits the building or the use must be answered. That issue is a matter of law.

In *Blevins v. Barry–Lawrence County Association for Retarded Citizens*, 707 S.W.2d 407 (Mo. banc 1986) the court dealt with an almost identical case. The court relied heavily on *Jackson v. Williams*, 714 P.2d 1017 (Okla.1985). The thrust of *Blevins* and *Jackson* is twofold. First the term "single-family residence" encompasses both a construction and a use limitation. "Single family" describes the appearance of the structure—that typically identified as a single family residence. "Residence" describes the use to be made of the premises. Such an analysis is logical. Restrictive covenants are intended to preserve the aesthetic and residential nature of the subdivision. If single family residence mandated solely a use limitation then flats, duplexes, or even apartment houses could be built in such subdivision if the use made was solely by a single family as a residence. If the term is a construction limitation only then buildings having the appearance of residences could be used solely for commercial purposes. The first portion of the restriction here therefore requires that the structure have the appearance of a single family dwelling and that it be used as a residence. Both of those criteria have been met here.

The second important aspect of *Blevins* and *Jackson* is in their treatment of "family" appearing in a restrictive covenant. Where the covenant does not define the term neither court was willing to restrict the family unit to that composed of persons who are related by blood or marriage. Both courts held that group homes where the residents function in a family setting, interdependent on one another in carrying out the daily operation and routine of the residence meet the single family requirement of the covenant. The evidence in this case, virtually undisputed, establishes the family nature of the use proposed.

*Blevins*, while purporting to distinguish *London v. Handicapped Facilities Board of St. Charles County*, 637 S.W.2d 212 (Mo.App.1982), effectively rejected the definition of family utilized by us in that case. *Blevins* controls our decision here.

The language of the covenant here "other than that of an exclusive private residence for one family" does not preclude the use contemplated. The defendant's building and the use contemplated for that building are not in violation of the restrictions of the subdivision. The trial court's denial of the requested injunctions was correct.

The judgment is affirmed.

SATZ, J., concurs.

CARL R. GAERTNER, C.J., concurs in result.