2009 ND 132

**David M. HILL and Lori D. Hill, Plaintiffs and Appellants**

v.

**James D. LINDNER and Pamela S. Lindner, Defendants and Appellees.**

No. 20080334.

Supreme Court of North Dakota.

July 14, 2009.

Rehearing Denied Aug. 20, 2009.

Robert G. Manly, Vogel Law Firm, Moorhead, MN, for plaintiffs and appellants.

Brian P. Toay, Wold Johnson, P.C., Fargo, ND, for defendants and appellees.

CROTHERS, Justice.

[¶ 1]   David and Lori Hill appeal from a summary judgment dismissing their action to enjoin James and Pamela Lindner from operating a licensed day care in their home. The Hills claim the district court erred as a matter of law in deciding the Lindners' licensed day care did not violate a restrictive covenant requiring the property to be used for "residential purposes only." We hold the Lindners' operation of a licensed day care in their home violates the restrictive covenant, and we reverse and remand for further proceedings.

I

[¶ 2]   The Hills and the Lindners are next door neighbors in Parkview South Second Addition in Fargo, and their homes are subject to a "Declaration of Restrictive Covenants and Reservation of Public Utility Easements," in which the property developers declared:

"that in order to protect the community and the individual land owners the said property shall be subject to the restrictions and conditions hereinafter set forth and that from this day forward, such restrictions and conditions shall apply to and be a part of every conveyance or deed to said property or any part thereof, the same as though fully incorporated in any deed or conveyance thereof. The said restrictions and conditions shall be deemed and considered as covenants running with the land when conveyed or deeded and shall be binding on the heirs, executors, administrators, successors and assigns of any person to whom said land may have been conveyed.

. . . .

"1.   *LAND USE AND BUILDING TYPE.* All lots zoned R–1A as presently defined in the zoning ordinances of the City of Fargo, North Dakota shall be used for single family residential purposes only, and all lots zoned R–1 shall be used for no more then double house purposes, other then unless developer chooses to temporarily use any one lot for sales office for the premises, no building or structure intended for or adopted to business purposes, and no apartment house, lodging house, rooming, hospital, sanitarium or professional office, or other multiple family dwellings shall be erected, placed, permitted or maintained on any such lot or on any part of such lot.   No improvement or structure whatsoever other than a first class private dwelling, patio walls, swimming pools and customary outbuildings, garages, car ports and fences subject to limitations herein set forth may be erected, placed or maintained on any such lot in the premises."

[¶ 3]   The Lindners purchased their property in Parkview Addition in 2001, and they have operated a licensed day care in

their home since then. In June 2008, the Lindners' day care was caring for eight children. In June 2008, the Hills sued the Lindners to enjoin them from operating the day care in their home, claiming that use was prohibited by the language in the restrictive covenant that the property "shall be used for single family residential purposes only." The Lindners answered, claiming the action was barred by laches, their day care complied with Fargo's zoning ordinances and their use of the property did not violate the restrictive covenant. The Lindners also counterclaimed for nuisance regarding the Hills' alleged lack of control of their dogs and sought damages and equitable relief for that claim.

[¶ 4] On cross-motions for summary judgment, the district court granted the Lindners summary judgment, concluding the restrictive covenant did not preclude them from operating the licensed day care in their home. In assessing the "residential purposes only" language, the court recognized the difference between covenants that require residential uses and covenants that prohibit commercial or business uses. The court said the usual, ordinary and incidental use of property as a residence does not violate a residential use restriction, but an unusual and extraordinary use may violate a residential use restriction. The court decided the Lindners' use of their home for their day care business was residential in nature and consistent with the incidental use of the home as a residence, which did not violate the language of the restrictive covenant for residential purposes only. The court also decided the covenant's restriction that "no building or structure intended for or adopted to business purposes ... shall be erected, placed, permitted or maintained" on the property was "a restriction only as to the type of construction and not as to the subsequent use of the structure." The court concluded that language was not a use restriction

and did not expressly prohibit business or commercial use of the property. The court did not decide issues about the effect of Fargo's zoning laws on the use of Lindners' property, or about whether public policy invalidated the covenant. The court also decided the Lindners' counterclaim about the Hills' dogs was not a compulsory counterclaim and dismissed it without prejudice.

## II

[¶ 5] We consider this appeal in the posture of summary judgment, which is a procedural device for promptly resolving "a controversy [on the merits] without a trial if either party is entitled to judgment as a matter of law, and if no dispute exists as to either the material facts or the inferences to be drawn from undisputed facts, or if resolving disputed facts would not alter the result." *Grinnell Mut. Reinsurance Co. v. Lynne*, 2004 ND 166, ¶ 9, 686 N.W.2d 118 (quoting *Hall Family Living Trust v. Mut. Serv. Life Ins. Co.*, 2001 ND 46, ¶ 6, 623 N.W.2d 32). "Whether [a district] court properly granted summary judgment is a question of law that we review de novo on the entire record." *Ernst v. Acuity*, 2005 ND 179, ¶ 7, 704 N.W.2d 869.

## III

[¶ 6] The narrow issue in this appeal is whether the Lindners' licensed day care in their home violates the restrictive covenant. The Hills argue the district court's decision violates the clear and unambiguous language in the restrictive covenant requiring the property to be used for "residential purposes only." They argue the word "only" precludes use of the property for all non-residential purposes, including incidental uses, and the Lindners are using their property for a business purpose. They assert the district court erred in

relying on *Beverly Island Ass'n v. Zinger,* 113 Mich.App. 322, 317 N.W.2d 611 (1982), which they claim is a dated, flawed and distinguishable Michigan case. They also claim the Lindners' home is "adopted to business purposes" under the language of the restrictive covenant. They further argue the court erred in using an "incidental use" analysis for the day care, and alternatively, if an "incidental use" analysis is appropriate, there are disputed issues of material fact that preclude summary judgment.

[¶ 7] The Lindners respond that the restrictive covenant does not prohibit all business or commercial uses because there is a significant difference between covenants requiring a residential use and covenants prohibiting a business or commercial use. They argue the residential use requirement permits some incidental business activity on the property. They claim the operation of the day care business in their home is an incidental business activity that is a permitted residential use, and if the drafters of the covenant had intended to exclude all business use from the property, they would have used language prohibiting commercial or business use.

[¶ 8] This Court has said a landowner may sell land subject to restrictive covenants, provided the covenants are not contrary to public policy. *Allen v. Minot Amusement Corp.,* 312 N.W.2d 698, 702 (N.D.1981). Restrictive covenants are not favored, but "they will be given ... [full] effect when clearly established." *Id.* The interpretation of a restrictive covenant is generally governed by rules for interpretation of a contract. *See Jackson v. Canyon Place Homeowner's Ass'n, Inc.,* 2007 SD 37, ¶ 9, 731 N.W.2d 210; *Milltown Addition Homeowner's Ass'n v. Geery,* 2000 MT 341, ¶ 11, 15 P.3d 458; *Stevens v. Elk Run Homeowners' Ass'n, Inc.,* 2004 WY 63, ¶ 13, 90 P.3d 1162 (Wyo.

2004). *See generally* 3 Richard R. Powell, *Powell on Real Property,* ch. 24 (2008); 9 Richard R. Powell, *Powell on Real Property* § 60.05 (2008); 20 Am.Jur.2d *Covenants, Conditions, and Restrictions* §§ 12–17, 168 (2005). Although restrictive covenants are strictly construed in favor of free use of land and against those who seek enforcement, the rule of strict construction will not be employed to defeat the obvious purpose of a restrictive covenant. *See* 20 Am.Jur.2d, *supra* §§ 12–17, 168. A restrictive covenant must be construed as a whole to ascertain the parties' intent in light of the surrounding circumstances and words must be given their plain and ordinary meaning. 9 *Powell on Real Property,* at § 60.05. *See* N.D.C.C. §§ 9–07–02; 9–07–04; 9–07–06; 9–07–09; and 9–07–12.

[¶ 9] Courts deciding whether the use of property for a day care facility violates restrictive covenants have reached contrary results depending on the language of the covenants and the facts and circumstances of each case. *See Williams v. Tsiarkezos,* 272 A.2d 722, 725 (Del.Ch. 1970) (holding day care violated restrictive covenant that prohibited trade or business on premises); *Chambers v. Gallaher,* 257 Ga. 795, 364 S.E.2d 576, 577 (1988) (holding family day care violated restrictive covenant prohibiting business); *Lewis–Levett v. Day,* 875 N.E.2d 293, 295–96 (Ind.Ct. App.2007) (holding licensed day care was not residential use and violated covenant prohibiting commercial use); *Stewart v. Jackson,* 635 N.E.2d 186, 190–93 (Ind.Ct. App.1994) (holding unlicensed day care did not violate restrictive covenant barring nonresidential use of property); *Berry v. Hemlepp,* 460 S.W.2d 352, 353–54 (Ky.Ct. App.1970) (holding day care center for 15–20 children per day violated restrictive covenant requiring all lots be used as residential lots); *Woodvale Condominium*

*Trust v. Scheff,* 27 Mass.App.Ct. 530, 540 N.E.2d 206, 208–09 (1989) (holding family day care violated provision of condominium master deed that units intended solely for residential dwelling purposes); *Terrien v. Zwit,* 467 Mich. 56, 648 N.W.2d 602, 605–07 (2002) (holding day care violated covenant prohibiting home business); *Beverly Island,* 317 N.W.2d at 612–14 (holding family day care did not violate restrictive covenant requiring residential use); *Walton v. Carignan,* 103 N.C.App. 364, 407 S.E.2d 241, 243 (1991) (holding family day care violated covenant for no commercial activity); *Martellini v. Little Angels Day Care, Inc.,* 847 A.2d 838, 842–44 (R.I.2004) (holding restrictive covenant that property shall be used solely and exclusively for single family residence purposes precluded operation of family day care for up to eight children in home); *Metzner v. Wojdyla,* 125 Wash.2d 445, 886 P.2d 154, 156–58 (1994) (adopting bright line rule prohibiting any commercial business use of property subject to residential use restriction and holding operation of licensed day care facility for no more than 10 children in home violated covenant requiring use of property for residential purposes only). *See generally* Barbara J. Van Arsdale, Annotation, *Children's Day Care Use As Violation of Restrictive Covenant,* 81 A.L.R.5th 345, § 2 (2000); Mark S. Dennison, *Application of Private Covenants Restricting Use of Property to Residential Purposes,* 43 Am.Jur. Proof of Facts 3d, § 17 (1997); 20 Am.Jur.2d, *supra* § 192.

[¶ 10] In *Metzner,* 886 P.2d at 157, the Washington Supreme Court adopted a "bright line rule which prohibits any commercial or business use of property which is subject to a residential use restriction." The court said that " 'residential' was the antonym of 'business' and that accepting paying customers was not synonymous with a residential purpose." *Id.* The court declined to require any further inqui-

ry into whether a day care center was either a primary or an incidental use of property because a business use was incompatible with the language of a covenant restricting use of the property to residential purposes. *Id.* at 157–58.

[¶ 11] In *Beverly Island,* 317 N.W.2d at 612–14, the Michigan Court of Appeals considered the meaning of a covenant prohibiting property from being "used except for residential purposes." The court recognized the difference between a covenant requiring residential uses and a covenant prohibiting business or commercial uses and held a covenant requiring residential uses allowed a licensed family day care facility for less than seven children. *Id.* The court said that a business or professional use does not constitute a per se violation of a covenant for residential use, explaining compensation may be a factor in deciding whether a use violates a restrictive covenant, but compensation is not determinative. *Id.* at 613. The court explained "a business ... use may not violate a residential use covenant ... [if the] use [is] casual, infrequent or unobtrusive." *Id.* The court held the family day care in that case was incidental to a residential use and did not constitute a use for residential purposes. *Id.*

[¶ 12] In *Terrien,* 648 N.W.2d at 605–07, the Michigan Supreme Court held a covenant prohibiting a commercial or business use was broader than a covenant requiring only residential uses. The court distinguished *Beverly Island* and held a covenant prohibiting commercial or business uses prohibited a licensed family day care in a home. *Id.* Contrary to the Hills' claim, *Terrien* did not overrule *Beverly Island;* rather, *Terrien* involved a restrictive covenant requiring residential uses and also prohibiting commercial, industrial or business uses. 648 N.W.2d at 606. *See* 9 *Powell on Real Property,* at § 60.05

(stating covenant restricting use of land to residential purposes, combined with prohibition of business or commercial purposes, usually bars minor business uses even in structure used mostly for dwelling purposes). *See also Bloomfield Estates Improvement Ass'n, Inc. v. Birmingham*, 479 Mich. 206, 737 N.W.2d 670, 674–82 (2007) (holding dog park violated covenant limiting use of land to "strictly residential purpose only"; discussing and explaining *Terrien* and *Beverly Island*).

[¶ 13]   We decline to adopt a bright line rule prohibiting any incidental business use on property with a restrictive covenant requiring use for "residential purposes only." *See Metzner*, 886 P.2d at 157–58. Although "residential" may be an antonym of "business," the plain meaning of the phrase "residential purposes only" is broader than the word "residential." We agree with the rationale of *Beverly Island* that the plain meaning of "residential purposes only" permits a wider variety of uses incidental to residential purposes than covenants prohibiting commercial or business uses. 317 N.W.2d at 613. We conclude that the usual, ordinary and incidental use of property as a residence does not violate a covenant restricting use of the property to residential purposes only, but that an unusual and extraordinary use may constitute a violation, and that an incidental business use does not violate a covenant for residential purposes only as long as the business use is casual, infrequent or unobtrusive. We therefore conclude an incidental business or commercial use does not per se violate a restrictive covenant requiring property to be used for residential purposes only.

■ [¶ 14]   Here, we conclude the Lindners' use of the property for a licensed day care facility in their home is more than a incidental use of their home. *See Lewis–Levett*, 875 N.E.2d at 295–98 (licensed day care center was more than

slight departure from residential use and did not constitute residential use of property); *Stewart*, 635 N.E.2d at 190–94 (family day care that did not require license was residential use). Under North Dakota law, early childhood facilities generally require a license from governmental authorities. *See* N.D.C.C. ch. 50–11.1 (defining various types of early childhood facilities for early childhood services and outlining licensing requirements). The licensing requirements for an early childhood facility reflect more than an incidental use of the premises. *See* N.D.C.C. § 50–11.1–04 (Application for license); N.D.C.C. § 50–11.1–07 (Investigation of applicants); N.D.C.C. § 50–11.1–08 (Minimum standards for early childhood facilities). The license is related to the premises on which the facility is located. *See* N.D.C.C. § 50–11.1–04 (premises must be in fit sanitary condition and properly equipped to provide for health and safety for all children who may be received); N.D.C.C. § 50–11.1–08(3) (allowing department of human services to authorize government unit to inspect any home for which a license is applied for or issued and to certify the home meets requirements under N.D.C.C. ch. 50–11.1).

[¶ 15]   Although this record does not establish the classification of the Lindners' early childhood facility, they conceded their facility had eight children in June 2008 and is licensed. *See* N.D.C.C. § 50–11.1–01 (defining classifications of early childhood facilities) and N.D.C.C. § 50–11.1–03 (outlining license requirements for early childhood facilities). On this record, we conclude the Lindners' licensed day care business in their home is more than an incidental use of the premises and violates the language of this restrictive covenant. We therefore reverse the district court judgment.

## IV

[¶ 16]   The district court did not decide whether public policy invalidates this re-

striction, or the effect of Fargo's zoning laws, which authorize a family day care for property zoned like Parkview Addition, and we do not address those issues.

## V

[¶ 17] We reverse the judgment and remand for further proceedings.

[¶ 18] GERALD W. VANDE WALLE, C.J., BENNY A. GRAFF, S.J., MARY MUEHLEN MARING, and DALE V. SANDSTROM, JJ., concur.

[¶ 19] The Honorable BENNY A. GRAFF, S.J., sitting in place of KAPSNER, J., disqualified.