

# In the
# Missouri Court of Appeals
# Western District

| | |
|---|---|
| **WILLOW FARM POOL AND HOMES ASSOCIATION, INC.,** | ) |
| | ) |
| **Respondent,** | ) |
| | ) **WD85837** |
| **v.** | ) **OPINION FILED:** |
| | ) **OCTOBER 10, 2023** |
| **RACHEL ZORN AND SCOTT ZORN,** | ) |
| | ) |
| **Appellants.** | ) |

**Appeal from the Circuit Court of Clay County, Missouri**
**The Honorable Timothy J. Flook, Judge**

**Before Division One: Anthony Rex Gabbert, Presiding Judge, Lisa White Hardwick, Judge,**
**Mark D. Pfeiffer, Judge**

Scott and Rachel Zorn ("the Zorns") appeal the grant of summary judgment in favor of Willow Farm Pool and Homes Association. The trial court found that the Zorns breached a section of the Declaration of Restrictions by providing child care services from their single family residential home. In six points on appeal, the Zorns argue the trial court erred in granting summary judgment because their child care service did not breach the restrictions, the restrictions were waived, genuine issues of material fact exist, there was no basis for a permanent injunction, and the restrictions violate public policy. The judgment is reversed and vacated, and judgment is entered in favor of the Zorns.

**Facts**

Scott and Rachel Zorn own property ("the Property") bound by the amendment to the Willow Farm Pool and Homes Association Declaration and Declaration of Restrictions ("the Homes Association" and "Homes Association Restrictions" respectively). They purchased the Property in August 2021. The Zorns have resided at the Property with their children since shortly after they purchased it. Rachel Zorn also operates a business, a licensed family child care home, at the Property.

Section 2 of the Homes Association Restrictions is titled "Use of Land" and was last amended in February 2020. It provides in relevant part:

> None of the lots … shall be used or occupied for other than single family residence purposes. Any residence erected or maintained on any of said lots shall be designed for occupancy by a single family. No residence shall be rented or leased for a rental or leasehold term of less than one year. Short term rental or use of the residence as a Bed and Breakfast … and any other use, rental or leasing of any residence for a period of less than one year, is prohibited.

The Homes Association Restrictions, Section 26, Enforcement, specifically states that "failure of the Homes Association or any other owner or owners from time to time of any lot of lots in this subdivision, to enforce any of the restrictions herein set forth as the time of its violation shall in no event be deemed to be a waiver of the right to do so thereafter."

In September 2021, the Homes Association made a written demand that the Zorns discontinue the daytime child care services being conducted inside the Property. The letter from the Homes Association stated that the operation of daytime child care services was in violation of Section 2 of the Homes Association Restrictions. The Zorns were

2

advised to discontinue the operation of a child care center inside the Property within thirty days. The Zorns sought a variance from Section 2 of the Homes Association Restrictions. The request for a variance was denied.

In February 2022, the Homes Association filed a petition for a mandatory injunction. The Homes Association sought a temporary restraining order, preliminary injunction, and permanent injunction against the Zorns to discontinue their child care service. The Zorns answered, raised affirmative defenses, and filed a counter petition for declaratory judgment. The Homes Association answered the counter petition. In July 2022, the Zorns were granted leave and filed their amended answer and counter petition. The Zorns also asserted several affirmative defenses, including the affirmative defense of waiver by the Homes Association and violation of public policy. The Zorns plead in relevant part:

> Plaintiffs have allowed a day care and have allowed and still allow home business, so Plaintiff is selectively enforcing its purported covenants and has waived them by acquiescence.
> …
> [P]laintiff has waived and abandoned its right to enforce the residential use Restrictive Covenant by forcing the closing of defendants' child day care home because plaintiff has allowed and still allows multiple homeowners to conduct business and commercial activities from their homes.
> …
> [T]he Restrictive Covenant…is unenforceable and void on the basis that the public policy of the State of Missouri and Kansas City is to provide children's day care with the same home environment as provided by a traditional home setting while their parents work.

The Homes Association did not file a responsive pleading to the Zorns' amended answer and counter petition.

3

Homes Association filed a motion for summary judgment in July 2022. The Homes Association argued that operating a daytime child care service from the Property was using the Property "for other than single family residence purposes." The Homes Association also argued that the non-waiver provision in Section 26 of the Homes Association Restrictions precludes the Zorns' affirmative defense of waiver.

The Zorns filed a motion for summary judgment in August 2022. They argued that nothing in Section 2 of the Homes Association Restrictions prohibits conducting a business at the Property while also using it as a single family residence. They further argued that any prohibition against conducting a business was waived by the Homes Association.

The trial court granted summary judgment in favor of the Homes Association. In its judgment, the trial court found that the Zorns' statement of additional facts Nos. 7 and 8 were legal conclusions and not statements of fact as required by Rule 74.04:

> 7. None of Plaintiff's twenty-three (23) Restrictions specifically or expressly state that the owner of a single family residence is prohibited from operating a business or conducting business activities from a residence occupied as a single family residence. (Plaintiff's Declaration of Restrictions dated February 1, 2020, attached as Exhibit E)
>
> 8. There is no specific or express provision in Plaintiff's Restrictions that states that commercial or business activities at a home occupied as a single family residence is prohibited. (Plaintiff's Declaration of Restrictions dated February 1, 2020, attached as Exhibit E)

4

The trial court further found that the Zorns' statement of additional facts Nos. 12, 13, and 14 are not supported by evidence meeting necessary authentication and hearsay foundational requirements and, therefore, are not supported by admissible evidence:

> 12. The business activities chart attached as Exhibit H shows thirty-eight (38) business activities at single family residences within the boundaries of Plaintiff's homeowners association. (Exhibit H)

> 13. Plaintiff has made no effort to prohibit any of the thirty-eight (38) business activities shown on the business activities chart attached as Exhibit H for the reason they violate Section 2 of the Restrictions. (Plaintiff's Answers to Defendants' First Interrogatories attached as Exhibit I)

> 14. There are thirty-three (33) business activities within the boundaries of Plaintiff's subdivision that are registered with the Missouri Secretary of State. (Exhibit H)

In its conclusions of law, the trial court found that operating a licensed family child care home out of the Property is using the Property for "other than single family purposes" in violation of Section 2 of the Homes Association Restrictions. It stated: "Residential purposes" has been defined by Missouri courts as "one in which people reside or dwell, or in which they make their homes, as distinguished from one which is used for commercial or business purposes." *County Club Dist. Homes Ass'n v. Country Club Christian Church*, 118 S.W.3d 185, 189 (Mo. App. W.D. 2003). The court concluded that the Zorns use the Property as a commercial business.

With respect to the Zorns' affirmative defense that the Homes Association waived the right to enforce Section 2 of the Homes Association Restrictions, the trial court relied on the non-waiver provision found in Section 26 of the Homes Association Restrictions.

5

The trial court discussed the admissible evidence submitted by the parties and found that the Homes Association has a substantial history of enforcing, or pursuing violations of, the Homes Association Restrictions. The Homes Association provided admissible evidence that it has enforced approximately one hundred and seventy two known violations in the prior ten years. It specifically enforced Section 2 of the Homes Association Restrictions against a property owner in January 2017. The trial court found that the Zorns "have no evidence, and have not demonstrated that they could prove at trial with admissible evidence, that [the Homes Association] had knowledge of a violation of the Homes Association Restrictions that it has not enforced pursuant to the terms of the Homes Association Restrictions."

With respect to the Zorns' affirmative defense that Section 2 of the Homes Association Restrictions violates public policy, the trial court found that the Zorns "have failed to allege a specific source of public policy which would render the restrictive covenant in this case unenforceable." It further stated that Missouri courts have enforced similar provisions to the one at issue in the current case.

The trial court stated in its judgment:

The Court concludes that there is no genuine dispute of material fact that the Defendants are using their home, or the Subject Property, for a commercial business which is a purpose other than as a single-family residence. Plaintiff is therefore entitled to judgment as a matter of law. The Court further concludes that Plaintiff has not adequate remedy at law available to enforce the restriction on the use of property, and will be irreparably harmed now and in the future should Defendants continue to use the property to operate a Licensed Family Child Care Homes in

6

violation of the Homes Association Restrictions unless Defendants are enjoined from continuing such use of the property.

This appeal follows.

## Standard of Review

The standard of review for summary judgment is as follows:

The trial court makes its decision to grant summary judgment based on the pleadings, record submitted, and the law; therefore, this Court need not defer to the trial court's determination and reviews the grant of summary judgment *de novo.* In reviewing the decision to grant summary judgment, this Court applies the same criteria as the trial court in determining whether summary judgment was proper. Summary judgment is only proper if the moving party establishes that there is no genuine issue as to the material facts and that the movant is entitled to judgment as a matter of law. The facts contained in affidavits or otherwise in support of a party's motion are accepted as true unless contradicted by the non-moving party's response to the summary judgment motion. Only genuine disputes as to material facts preclude summary judgment. A material fact in the context of summary judgment is one from which the right to judgment flows.
....
The record below is reviewed in the light most favorable to the party against whom summary judgment was entered, and that party is entitled to the benefit of all reasonable inferences from the record. However, facts contained in affidavits or otherwise in support of the party's motion are accepted as true unless contradicted by the non-moving party's response to the summary judgment motion.

*Brockington v. New Horizons Enterprises, LLC*, 654 S.W.3d 876, 880 (Mo. banc 2022)

(internal quotation marks omitted).

[A] genuine issue exists where the record contains competent materials that evidence two plausible, but contradictory, accounts of the essential facts.... [T]he rule that the non-movant is given the benefit of all reasonable inferences means that if the movant requires an inference to establish his right to judgment as a matter of law, and the evidence reasonably supports

7

any inference other than (or in addition to) the movant's inference, a genuine dispute exists and the movant's prima facie showing fails.

*Id*. (internal quotation marks omitted). "The interpretation of a restrictive covenant is a question of law and as such is to be reviewed *de novo* on appeal. *Golf Club of Wentzville Community Homeowners Assn. v. Real Homes, Inc.*, 616 S.W.3d 339, 342 (Mo. App. E.D. 2020).

## Point I

In their first point on appeal, the Zorns claim the trial court erred in granting summary judgment in favor of the Homes Association. They state that the plain and ordinary language of Section 2 of the Homes Association Restrictions does not expressly prohibit their business activity. The Zorns argue the business activity is taking place at their single family residence and that the Property is being used for single family purposes.

"Restrictive covenants are not favorites of Missouri law." *Golf Club of Wentzville Community Homeowners Assn.*, 616 S.W.3d at 342 (internal quotation marks omitted). "Restrictive covenants on realty are strictly construed as the law favors untrammeled use of real estate." *Id*. (internal quotation marks omitted). "The burden of proving that the use being made of real estate is in violation of restrictions is on the party seeking to enforce the restrictions." *Id*. (internal quotation marks omitted).

"Restrictive covenants will not be extended by implication to include anything not clearly expressed in them, and if there is substantial doubt of their meaning, such doubt

8

should be resolved in favor of the free use of the property." *Id.* (internal quotation marks omitted). "A restrictive covenant is not open to judicial construction if it is unambiguous." *Id.* (internal quotation marks omitted). "Terms used in restrictive covenants should be applied in accordance with their plain, everyday or popular meaning." *Id.* at 344 (internal quotation marks omitted). "The language used in the entire instrument should be considered, however, and not just one clause." *Id.* (internal quotation marks omitted). "Although not favored, restrictive covenants are private contractual obligations, and therefore governed by the rules of construction applicable to any other covenants or contracts." *Mullin v. Silvercreek Condo. Owner's Ass'n, Inc.*, 195 S.W.3d 484, 490 (Mo. App. S.D. 2006). "The intention of the parties comes from the plain language of the covenant, but must also be considered in light of the entire context of the instrument containing the covenant." *Id.*

It seems that no Missouri court has addressed whether a home day care violates a restrictive covenant requiring a property to be used for residential purposes. Missouri courts have addressed restrictive covenants in other respects, though. In *Golf Club of Wentzville Community Homeowners Assn.*, 616 S.W.3d at 343, the court considered whether the rental of a home as a single-family residence violated a declaration that "[n]o Lot shall be used for any business or commercial purpose, and each Lot shall be used solely for residential purposes" and "[n]o signage of any kind shall be displayed to the public view on any Lot, except … one sign … advertising the Lot for sale or rent." The court stated that "the plain and ordinary meaning of 'residential purposes' in restrictive

9

covenants as applied to the use of a building is one in which people reside or dwell, or in which they make their homes, as distinguished from one which is used for commercial or business purposes." *Id*. (internal quotation marks omitted). It concluded that "absent express language within the restrictive covenant indicating otherwise, the rental of residential property to tenants for living purposes constitutes a 'residential purpose.'" *Id*. at 344.

In *Mullin*, 195 S.W.3d at 487-88, the court considered whether renting condominium units on a nightly basis violated a declaration that "[a]ll units and restricted common elements shall be used, improved and devoted exclusively to residential use by a single family" and "[n]o business, trade, occupation or profession of any kind shall be conducted, maintained or permitted on any part of the property." The declarations also stated that "[n]othing … is intended to restrict the right of any condominium unit owner to rent or lease his (their) condominium unit from time to time or to engage any person, firm or corporation, to rent or lease said unit." *Id*. at 488.

Discussing the definition of "residential purposes," the court stated that "the unit owners' use of their units and restricted common elements must be for the purpose of residing or dwelling there, or in a manner making the realty a home, as distinguished from using the realty for commercial or business purposes." *Id*. at 490. It then discussed that restriction in the context of the additional declaration that renting or leasing of units "from time to time" is permitted. *Id*. Reading the two provisions together, the court concluded that short term or nightly rentals were allowed. *Id*.

10

In *Country Club Dist. Homes Ass'n*, 118 S.W.3d at 187, the court considered whether a restrictive covenant stating "[n]one of said lots shall be improved, used nor occupied for other than private residence purposes" prohibited a church from building a parking lot. This court cited precedent that residential purposes means "one in which people reside or dwell, or in which they make their homes, as distinguished from one which is used for commercial or business purposes," but that "private residence purposes" is more restrictive. *Id*. at 193. It cited precedent that "a covenant restricting use to 'private residence purposes' meant that the use or occupancy of the lots in question be *only* for residential purposes, and this would be clearly to the exclusion of *all* other purposes." *Id*. (internal quotation marks omitted). This court concluded that "[t]he plain and ordinary language of this restrictive covenant limits the use of the property to private residence purposes only, which are uses that are *only* for residential purposes, ... to the exclusion of all other purposes." *Id*. (internal quotation marks omitted) (emphasis in original). It held that the parking lot was prohibited by the restrictive covenant. *Id*.

In *Maull v. Community Living for Handicapped, Inc.*, 813 S.W.2d 90, 91 (Mo. App. E.D. 1991), the court considered whether a residential group home for mentally handicapped young adults violated a restrictive covenant stating "[n]o lot shall be used except for single family residential purposes" and "[n]o residence shall be used directly or indirectly for business or any quasi-business, or for any other purpose other than that of an exclusive private residence for one family." The young adults would reside at the

11

home but staff members would not. *Id*. Most of the young adults were expected to eventually leave the group home. *Id*.

In its analysis, the *Maull* court relied on *Blevins v. Barry–Lawrence County Association for Retarded Citizens,* 707 S.W.2d 407 (Mo. banc 1986), which involved an almost identical issue. *Id*. at 92. The *Maull* court noted that *Blevins* relied heavily on *Jackson v. Williams,* 714 P.2d 1017 (Okla. 1985). *Id*. Both of those cases "held that group homes where the residents function in a family setting, interdependent on one another in carrying out the daily operation and routine of the residence meet the single family requirement of the covenant." *Id*. The *Maull* court concluded that that the language in the restrictive covenant did not prohibit the residential home. *Id*.

Other jurisdictions have considered whether a home day care violates applicable restrictive covenants pertaining to residential purpose. There is no clear consensus. *See, e.g., Hill v. Lindner*, 769 N.W.2d 427, 428 (N.D. 2009) ("Courts deciding whether the use of property for a day care facility violates restrictive covenants have reached contrary results depending on the language of the covenants and the facts and circumstances of each case."); *Metzner v. Wojdyla*, 886 P.2d 154, 156 (Wash. 1994) ("Some states have held that operation of a residential child day care facility violates covenants restricting use of premises to residential purposes only. However, other states have held that use of a private residence for a child day care facility does not violate covenants restricting use of property to residential purposes only. Examination of case law throughout the United States is not helpful."); *Stewart v. Jackson*, 635 N.E.2d 186, 191 (Ind. App. 1st Dist.

1994) ("Several other states have had an opportunity to address the question we face, but their views are divergent."); *Woodvale Condo. Tr. v. Scheff*, 540 N.E.2d 206, 208 (Mass. App. 1989) ("By no means have the decisions lined up in one direction.").

A number of cases discuss the difference between a restriction requiring residential use and a restriction prohibiting business or commercial use. In *Beverly Island Ass'n v. Zinger,* 317 N.W.2d 611, 612 (1982), the Michigan Court of Appeals considered whether a home day care violated a restrictive covenant stating that "[n]o lot or building plot shall be used except for residential purposes." The court found this language "permits residential uses rather than prohibiting business or commercial uses." *Id*. "A restriction allowing residential uses permits a wider variety of uses than a restriction prohibiting commercial or business uses." *Id*. at 613. The court discussed the small number of children present and found that "[t]he only observable factor which would indicate to an observer that defendants do not simply have a large family is the vehicular traffic in the morning and afternoon when the children arrive and depart." *Id*. at 614. It concluded the home day care was residential in nature. *Id*.

In *Terrien v.. Zwit,* 648 N.W.2d 602, 605 (Mich. 2002), the Michigan Supreme Court considered whether a home day care violated a covenant prohibiting any lot to be "used except of residential purposes," or for "any commercial, industrial, or business enterprises." It distinguished *Beverly Island* noting that the covenant in its case included a prohibition against commercial, industrial, and business uses. *Id*. at 606. It found a "significant distinction" between prohibiting non-residential uses and prohibiting

13

business uses. *Id*. "While the former proscribes activities that are nonresidential in nature, the latter proscribes activities that, although perhaps residential in nature, are also commercial, industrial, or business in nature as well." *Id*. The court concluded that the home day care violated the covenant. *Id*. at 607.

In *Hill*, 769 N.W.2d at 428, the North Dakota Supreme Court considered whether a licensed home day care was prohibited by a restrictive covenant requiring the property to be used for "residential purposes only." The court declined to adopt a bright line rule. *Id*. at 432. It stated that "[a]lthough 'residential' may be an antonym of 'business,' the plain meaning of the phrase 'residential purposes only' is broader than the word 'residential.'" *Id*. It "agreed with the rationale of *Beverly Island* that the plain meaning of 'residential purposes only' permits a wider variety of uses incidental to residential purposes than covenants prohibiting commercial or business uses." *Id*. The court concluded, however, that the use of property for a licensed day care facility was more than incidental use of the home. *Id*. It found that the home day care violated the restrictive covenant. *Id*.

In *Southwind Homeowners Ass'n v. Burden*, 810 N.W.2d 714, 716 (Neb. 2012), the Nebraska Supreme Court considered whether a home day care violated a restrictive covenant stating that "[e]ach lot shall be used exclusively for single-family residential purposes" and "[n]o business activities of any kind whatsoever shall be conducted on any Lot including home occupations…." The court found that the terms were unambiguous and that the home day care was a business activity prohibited by the covenants. *Id*. at 719. It distinguished a prior case that held the operation of a group home did not violate

14

a covenant restricting the use of property to only a residential purpose because the covenant in the prior case did not explicitly prohibit business or commercial activities. *Id*.

In *Khamnei v. Coven*, 2007-200, 2007 WL 5313377, *1 (Vt. Dec. 2007), the Vermont Supreme Court considered whether a home day care violated a covenant stating that "[t]he premises shall be occupied and used for residence purposes only and not otherwise." The court noted that the covenant did not prohibit all commercial and business uses. *Id*. at *2. The court also stated that nothing suggested the covenant was intended to prohibit home instructional programs like music lessons and tutoring and that state and local zoning laws recognize in-home day cares as residential uses. *Id*. The court stated that "the covenant does not prohibit all commercial and business uses; rather it requires use to be for 'residence purposes only and not otherwise.'" *Id*. at *3. "There is nothing in the language of the deed or the context of the deed's creation to suggest that this restriction intended to prohibit all commercial and business uses." *Id*. It concluded that the deed language did not prohibit the operation a home day care. *Id*.

Other cases discussing the implication of a restrictive covenant explicitly stating that business activity is prohibited include *Ridgewood Associates v. McKinnon*, 232281, 2002 WL 1923803, at *1 (Mich. App. Aug. 20, 2002) (licensed day care home not prohibited by restriction stating "[n]o residence will be used or occupied by other than a single family, its temporary guests and family servants, and no residence will be used for other than residential use" in part because the restrictive covenant "does not directly bar

15

commercial use"); *Lewis–Levett v. Day,* 875 N.E.2d 293, 294 (Ind. Ct. App. 2007) (home day care is a commercial use prohibited by restrictive covenant stating "[e]ach lot in the subdivision shall be restricted to a one-family dwelling" and "[n]o lot nor any building erected thereon shall at any time be used for the purpose of any trade, business, manufacture or profession. Peddling, soliciting, or commercial enterprises are not allowed in the estates or subdivision."); *Stewart*, 635 N.E.2d at 190–94 (noting that a home day care was not large enough to require a license and holding that the unlicensed home day care did not violate restrictive covenant requiring lots be used solely for residential purposes and specifically excluding any commercial business, trade, or activity); *Walton v. Carignan,* 407 S.E.2d 241, 242 (N.C. App. 1991) (home day care violated restrictive covenant stating "[a]ll lots and lands shall be used exclusively for residential purposes. No lots or lands … shall be used or occupied … for any commercial purposes of any kind or character whatsoever, or for the conducting of any business" and "nor shall there be any business, trade or profession conducted or practiced on the lots or lands"); *Chambers v. Gallaher,* 364 S.E.2d 576, 577 (1988) (family day care was prohibited by a restrictive covenant stating "[n]o business or trade of any nature or character be transacted in said subdivision"); *Williams v. Tsiarkezos,* 272 A.2d 722, 725 (Del. Ch. 1970) (home day care was prohibited by a restrictive covenant stating "[n]o trade, business, commerce, industry or occupation … shall be permitted"); *Shoaf v. Bland,* 69 S.E.2d 258, 260 (Ga. 1952) (home kindergarten not prohibited by restrictive

16

covenant stating "[a]ll lots in the tract shall be known, described, and used solely as residential lots")

Another line of reasoning seen in cases addressing home day cares and restrictive covenants is the difference between a restriction requiring residential use and a restriction requiring exclusively or solely residential use. In *Martellini v. Little Angels Day Care, Inc.*, 847 A.2d 838, 839–45 (R.I. 2004), the Rhode Island Supreme Court considered whether a home day care violated a restrictive covenant stating that "[s]aid premises shall be used solely and exclusively for single family private residence purposes." *Id*. at 843. It found the covenant unambiguous. *Id*. The court stated that "[b]y use of the words 'solely and exclusively,' the limitation precludes business or commercial activities in the restricted areas." *Id*. The court held that the home day care violated the covenant. *Id*. at 845.

In *Woodvale Condo. Tr.*, 540 N.E.2d at 207, the Massachusetts Appeals Court considered whether a family day care home was prohibited by a restriction stating that "[e]ach of the residential buildings and each of the Units are intended to be solely for residential dwelling purposes." The court found that "the injection of the word 'solely' into the phrase 'intended to be solely for residential dwelling purposes' inhibits construing the phrase as descriptive rather than preclusive." *Id*. at 209. The court concluded that the day care was prohibited by the restriction. *Id*.

Some courts have concluded that home day cares violate restrictive covenants limiting use to residential purpose generally without an additional reference to business

17

purposes or words like solely or exclusively. In *Metzner*, 886 P.2d at155, the Washington Supreme Court considered whether a licensed home child care facility was prohibited by a restrictive covenant stating that "[s]aid property shall be used for residential purposes only." The court adopted "a bright line rule which prohibits any commercial or business use of property which is subject to a residential use restriction." *Id*. at 157. The court said that "'residential' was the antonym of 'business' and that accepting paying customers was not synonymous with a residential purpose." *Id.*; s*ee also Cloverdale Neighborhood Ass'n v. Goss*, CA07-62, 2008 WL 442626, at *3 (Ark. App. Feb. 20, 2008) (restriction stating "[n]o lot shall be used except for single-family residential purposes" prohibited a home day care); *Berry v. Hemlepp,* 460 S.W.2d 352, 353–54 (Ky. Ct. App. 1970) (holding day care center for 15–20 children per day violated restrictive covenant requiring all lots be used as residential lots).

In the current case, Section 2 of the Homes Association Restrictions states in relevant part that "[n]one of the lots … shall be used or occupied for other than single family residence purposes." The Homes Association argues that any and all business or commercial activity is prohibited by the Homes Association Restrictions. It maintains that the Homes Association Restrictions create a bright line between residential and business and that the prohibition against business activity is complete and absolute.

The Homes Association interpretation is extreme in today's modern world. The Homes Association was questioned at oral argument about employees in an office job who might continue working at home. The Homes Association argued that this type of

18

activity would be prohibited by the Homes Association Restrictions. Under the Homes Association's bright line argument, an employee would be prohibited from checking their work email, making a work phone call, completing a work project, or engaging in any work activity in their home. We reject this interpretation.

The words "business" or "commercial" do not appear anywhere in the Homes Association Restrictions. We agree with the cases above discussing the difference between a restriction requiring residential use and a restriction prohibiting business or commercial use. We are also persuaded by this court's analysis in *Country Club Dist. Homes Ass'n* discussing how residential purposes is a broad term that does not necessarily mean *only* residential purposes and is a term that can be narrowed with additional language. 118 S.W.3d at 193 (finding that "private residence purposes" is more restrictive than "residential purposes").

It is undisputed that the Zorns and their children live at the Property full time. It is their residence and they use it for residential purposes.[1] The trial court erred in finding that a licensed family child care home is prohibited by Section 2 of the Homes Association Restrictions. The point is granted.

---

[1] We note that Kansas City, Missouri Zoning and Development Code 88-330-01 requires family day care homes to meet the following relevant standards: "[t]he predominant use of the premises must be residential" and "[t]he use must be carried on or conducted by members of a family residing in the dwelling."

**Point II**

In their second point on appeal, the Zorns claim the trial court erred in denying their motion for summary judgment. They state that the trial court should have found that their daytime child care service at their single family residence did not breach Section 2 of the Homes Association Restrictions. They request summary judgment in their favor.

"A trial court's overruling of a motion for summary judgment generally is not subject to appellate review." *Bob DeGeorge Associates, Inc. v. Hawthorn Bank*, 377 S.W.3d 592, 596 (Mo. banc 2012). "In rare circumstances, however, the overruling of a party's motion for summary judgment can be reviewed when its merits are intertwined completely with a grant of summary judgment in favor of an opposing party." *Id*. at 596-97. In the current case, the Zorns and the Homes Association filed opposing, parallel motions for summary judgment. The merits of each motion for summary judgment involved whether Section 2 of the Homes Association Restrictions prohibits an in home day care. Our review of the grant of summary judgment to the Homes Association necessarily includes a review of the overruling of the Zorns' motion for summary judgment. *See id*. at 597.

As discussed in Point I, the Zorns' in home day care is not prohibited by Section 2 of the Homes Association Restrictions. The point is granted.

**Conclusion**

In Point III, the Zorns claim that the trial court erred in invoking the non-waiver provision found in Section 26 of the Homes Association Restrictions. In Point IV, the

20

Zorns claim the trial court erred in rejecting their defense that the Homes Association waived its right to enforce the Homes Association Restriction. In Point V, the Zorns claim the trial court erred in granting a permanent injunction in favor of the Homes Association. In Point VI, the Zorns claim the trial court erred in not finding that Section 2 of the Homes Association Restrictions violates public policy. Given our disposition of the first two points, we need not consider Points III-VI.

Pursuant to Rule 84.14. "[t]he appellate court shall … give such judgment as the court ought to give. Unless justice otherwise requires, the court shall dispose finally of the case." As discussed above, the Zorns are entitled to summary judgment as a matter of law. Justice does not require us to remand the case for further proceedings. Accordingly, it is proper to enter judgment in favor of the Zorns, pursuant to Rule 84.14. The judgment of the trial court is reversed and vacated. Judgment is hereby entered in favor of the Zorns on their motion for summary judgment.

_____
Anthony Rex Gabbert, Judge

All concur.

21